DORIS BATES, Indiv. and as Special Adm'x of the Estate of Edward T. Bates, Deceased, Plaintiff-Appellant, v. RICHLAND SALES CORPORATION, Defendant and Third-Party Plaintiff-Appellee (Grand Prairie Coop Company, Inc., Third-Party Defendant).

Fourth District    No. 4—03—0425

Argued December 17, 2003.—Opinion filed January 21, 2004.

Mary E. Massa (argued), of Becker & Galanti, P.C., of Granite City, for appellant.

Karen L. Kendall (argued), of Heyl, Royster, Voelker & Allen, of Peoria, John D. Flodstrom and Jay E. Znaniecki, both of Heyl, Royster, Voelker & Allen, of Urbana, and Edward H. Rawles (argued), of Rawles, O'Byrne, Stanko & Kepley, P.C., of Champaign, for appellee.

JUSTICE APPLETON delivered the opinion of the court:

Grand Prairie Coop Company, Inc. (Grand Prairie), deals in fertilizer and grain and has several branches or facilities, including the Apex facility, a mile west of Tolono. On March 4, 1997, at the Apex facility, an employee of Grand Prairie, Edward T. Bates (Bates), was fatally injured on a Wrangler front-end loader, from which employees of Grand Prairie had removed the roll bar. If the roll bar had been in place, Bates would have been unharmed. Richland Sales Corporation (Richland) had sold the loader to Grand Prairie, with the roll bar installed, some five years earlier.

Individually and as special administratrix of Bates's estate, plaintiff, Doris Bates, sued Richland under theories of negligence and strict products liability, alleging the loader was dangerously defective in its design. The trial court dismissed the negligence counts in successive versions of her complaint because of failure to state a cause of action. She moved for leave to file a third-amended complaint, consisting of counts I and II, sounding in strict products liability, and counts III and IV, sounding in negligence. The court granted the motion only

as to the first two counts, refusing to allow her to replead negligence in counts III and IV. Afterward, the court granted summary judgment in Richland's favor on counts I and II.

Plaintiff appeals, arguing the trial court erred in denying her motion to replead negligence and in granting Richland's motion for summary judgment on her claim of strict products liability. Because counts III and IV, on their face, were legally insufficient and a claim of negligence would be untenable in light of the record, we find no abuse of discretion in the trial court's disallowance of those counts. Because the danger that caused Bates's death would have been obvious to an ordinary person driving a loader without a roll bar, we agree with the summary judgment. Therefore, we affirm the trial court's judgment.

## I. BACKGROUND

Bates was using the loader to move steel pipes into a building called the "Tolono South Flat." He had attached the pipes to the bucket of the loader with a chain and was dragging them backward into the building. Grand Prairie stored grain in the building, and to keep the grain from bellying out the walls, they were reinforced with thick steel rods, a pair of rods at each end wall, extending diagonally from the floor to the side walls and forming an X. At the east end of the building, a rod slanted on either side of the door. Bates backed up against one of these rods, which sprung over the driver's seat and struck him in the back, crushing him against the steering wheel.

Grand Prairie had bought the loader from Richland in 1992, after making sure it would fit into the bins at the Ivesdale facility. Don Van Lyssel was Richland's sales manager at that time. In his deposition on February 3, 2003, he admitted never telling the salespeople under him to ask potential buyers if they had buildings with low clearances. He testified, however, that Richland had a policy of "demonstrating" a loader before selling it. "I would say, [']*** [L]et's take it to where you are going to run it *** and be sure that it fits in the bins and maneuvers around the corners *** and that you have got adequate clearance ***.['] " Because the Ivesdale facility had bins and the Apex facility had no "bins[ ] per se" but, rather, "huge flat storage building[s]," Van Lyssel demonstrated the loader at the Ivesdale facility, where, he assumed, any problems with low clearances or insufficient space would most likely manifest themselves. "If it wouldn't fit, we would not sell it," he said. He "turned down, on average, two to five sales per season, because [the loader] would not fit in the building, and there is no way [he] wanted them to take the [roll bar] off."

Plaintiff's attorney asked Van Lyssel:

"Q. *** You were familiar with all of the buildings [at the Apex facility]?

A. Yes, I was.

Q. At least as far as getting inside the building?

* * *

THE DEPONENT: Yes."

Richland delivered the loader to Grand Prairie with a rollover protection system (roll bar) installed. The roll bar was a steel structure consisting of two roughly vertical columns mounted behind, and on either side of, the driver's seat, and a square frame or canopy extending, from the top of these columns, over the driver's head. Van Lyssel testified the loader was 94 inches tall from the bottom of the tires to the top of the standard roll bar (the type of roll bar Grand Prairie had on its loader). The manual that came with the loader said it was 96 inches tall. He testified: "I had some guys over the years"—but never Grand Prairie—"say to me, ['W]ell, we could take that [roll bar] off[.'] " He told them, " [']That is not an option. If you take that [roll bar] off, huh-uh, I am not going to be any part of that.[']" To Van Lyssel, it was "totally inconceivable" that anyone would remove the roll bar; it offended common sense, like removing a seatbelt. Other than this case, he had never heard of anyone's actually removing the roll bar from a loader.

Plaintiff theorized that companies in the fertilizer industry had an incentive to remove the roll bar and knowing that incentive, Richland had failed to recommend to Grand Prairie an optional roll bar, which had a lower clearance. In the fertilizer business, many buildings dating from the 1960s had entrances that were less than 96 inches tall—not enough clearance for the standard roll bar. For those older buildings, the manufacturer had designed an optional roll bar with a canopy that swung back. According to the manual, swinging back the canopy took six inches off the height of the loader, enabling it to enter those older buildings. Van Lyssel claimed, however, to have measured a loader equipped with the optional roll bar and found no difference at all in height. For that reason and also because he was concerned that a sack of fertilizer might fall on the driver while the top was open, he refused to sell or even recommend the optional roll bar.

With the standard roll bar installed, Grand Prairie's Wrangler loader could enter the South Tolono Flat, although, obviously, one had to maneuver around the diagonal wall-rods. Building No. 20 in the Apex facility, however, had internal structures, horizontal wall-rods, that were too low for the loader—unless one removed the roll bar. Sometime between March 1992 and March 1997, employees of Grand Prairie did so and never put it back, believing the sole purpose of a roll bar was (as its name suggested) to protect the driver in a rollover—not much of a threat, apparently, on the flat ground of the Apex

facility. The manual warned, in conspicuous capital letters, never to operate the loader with the roll bar removed, but the manual was filed away in the office of the Apex facility and was seldom, if ever, read.

Removing the roll bar took less than 30 minutes and required a hoist, wrench, and wire cutters. All employees had access to the shop and its tools. Each of the two columns of the roll bar was mounted on the loader with four bolts. The roll bar weighed over 300 pounds, and while unbolting it, one had to hold onto it with a hoist, or else it would fall backward because of the slightly backward tilt of the columns. After loosening the nuts and bolts and cutting the electrical wires of the canopy lights, one had to lift the roll bar off with the hoist.

Unfortunately, the roll bar had not been reinstalled when Bates used the loader in the Tolono South Flat. If the roll bar had been in place, the diagonal wall-rods would have pressed against the vertical columns of the roll bar, behind the driver's seat, instead of against Bates's back, and he would have escaped injury. Six months after the accident, Grand Prairie bought the optional roll bar, which, when the canopy was swung back, allowed the loader to clear the horizontal wall-rods in building No. 20.

Plaintiff's expert opined in his deposition that the loader was defective and unreasonably dangerous because (1) the roll bar was bolted, rather than welded, to the body of the loader, making it removable; and (2) the loader lacked a warning sticker stating not to use the loader without the roll bar installed.

On September 20, 1999, plaintiff filed a second-amended complaint, the first two counts sounding in negligence and the remaining two counts sounding in products liability. In counts I and II, plaintiff alleged Richland was negligent in that it sold the loader (1) "without adequate protective devices on the rear of the machine to protect the head and body of the machine operator who may be operating the machine in reverse"; (2) "with a roll[ ]bar that provided inadequate protection for the machine operator, in that the roll[ ]bar was able to be removed, with no warning to the consumer about the dangers associated with operation of the machine without the roll[ ]bar"; and (3) "with a roll[ ]bar whose uprights were unhinged at the center, forcing the consumer to remove the roll[ ]bar rather than fold them down, in order to operate the machine in a low-ceilinged environment."

Richland moved to dismiss counts I and II of the second-amended complaint, with prejudice, for failure to state a cause of action, and the trial court granted the motion. On the authority of *Miller v. Dvornik*, 149 Ill. App. 3d 883, 501 N.E.2d 160 (1986), and section 402 of the Restatement of Torts (Restatement of Torts § 402 (1948 Supp.)),

the trial court held that having received, from the manufacturer, a complete and fully assembled loader, Richland had no duty to modify the roll bar before selling the loader to Grand Prairie, even though (as plaintiff alleged) Richland knew, or should have known, that Grand Prairie would use the loader in a building with a low ceiling. The court further held that being crushed against low-hanging internal structures of the building was an open and obvious danger when driving a loader with the roll bar removed, and Richland had no duty to warn against that danger, of which all reasonable persons would have been equally aware.

On April 2, 2003, plaintiff filed a motion to amend her second-amended complaint on the basis of information she had gleaned from Lyssel's deposition. Counts I and II of the proposed third-amended complaint sounded in products liability. In those counts, plaintiff alleged the loader was defective and unreasonably dangerous in that (1) the roll bar "was readily removable by the operator of the loader, when it was foreseeable by [Richland] that the [roll bar] might be removed"; and (2) the loader lacked an "adequate warning of the danger to the user or consumer of operating the loader with the [roll bar] removed."

Counts III and IV of the proposed third-amended complaint sounded in negligence. Plaintiff alleged Richland "was familiar with [Grand Prairie's] facilities ***[,] including [b]uilding [No.] 20," and "knew or should have known" the "height restrictions." She further alleged Richland "knew or should have known that its customers might remove the standard [roll bar] if they could not operate the Wrangler loader in a building with a height restriction less than 94 inches." According to plaintiff, Richland was negligent in that it sold the loader to Grand Prairie (1) "when it knew or should have known that Grand Prairie [could not] operate the loader with the [roll bar] attached in [b]uilding [No.] 20" and (2) "without inquiring whether any of [Grand Prairie's] buildings [had] a height restriction."

The trial court gave plaintiff leave to plead counts I and II, since the allegations of strict products liability would not have unfairly surprised Richland. The court denied leave, however, to plead counts III and IV, the negligence counts, not only because they failed to allege a duty but also because trial was only six days away and plaintiff had failed to exercise "due diligence." Discovery had ended months before, and plaintiff offered no explanation for the two-month delay between Lyssel's deposition and her filing of this latest motion to amend. Besides, the trial court saw no significant difference between plaintiff's present allegations of negligence and the negligence counts in the second-amended complaint—counts the court had dismissed on January 4, 2000, because they were legally insufficient.

The trial court later entered summary judgment in Richland's favor on counts I and II of the third-amended complaint, the counts sounding in strict products liability.

This appeal followed.

## II. ANALYSIS

### A. Motion To Amend To Allege Negligence

The trial court denied a portion of plaintiff's motion to amend, rejecting counts III and IV (the negligence counts) of the proposed third-amended complaint. We ask whether that ruling was an abuse of discretion. See *Lee v. Chicago Transit Authority*, 152 Ill. 2d 432, 467, 605 N.E.2d 493, 508 (1992). The court abused its discretion only if no reasonable person could agree with the ruling. See *Schwartz v. Cortel- . loni*, 177 Ill. 2d 166, 176, 685 N.E.2d 871, 876 (1997).

■ Section 2—616(a) of the Code of Civil Procedure provides:

"(a) At any time before final judgment[,] amendments may be allowed on just and reasonable terms, *** in any matter, either of form or substance, in any *** pleading ***, which may enable the plaintiff to sustain the claim for which it was intended to be brought." 735 ILCS 5/2—616(a) (West 2002).

In section 2—616, the legislature expressed its intention that no mere deficiency in pleading deprive a party of his or her day in court but that, consonant with justice and reason, the court allow the party to replead so that substantive merit, rather than pleading technicalities, decide the outcome of the case. *Moss v. Gibbons*, 180 Ill. App. 3d 632, 638, 536 N.E.2d 125, 129 (1989).

■ Despite that liberal policy, the right to amend is not absolute. *Lee*, 152 Ill. 2d at 467, 605 N.E.2d at 508. In deciding whether to allow the amendment, the trial court should consider, among any other relevant factors, (1) whether the amendment would cure a defect in the pleading; (2) whether the amendment would surprise, and thereby unfairly prejudice, the opposing party; (3) whether the motion to amend is timely; and (4) whether the party had previous opportunities to amend the pleadings. *Lee*, 152 Ill. 2d at 467-68, 605 N.E.2d at 508.

■ Of course, if the amendment would not have cured a defect in the pleading, the other factors are superfluous. *Taylor v. City of Beardstown*, 142 Ill. App. 3d 584, 591, 491 N.E.2d 803, 808 (1986). Plaintiff's allegations of negligence suffer from a defect that counts III and IV of the proposed third-amended complaint do not cure: she alleges Richland knew, or should have known, that Grand Prairie would remove the roll bar from the loader, but she alleges no facts from which one might reasonably infer such knowledge. The legal sufficiency of a complaint depends on well-pleaded facts rather than

conclusions (*McMahon v. City of Chicago*, 339 Ill. App. 3d 41, 45, 789 N.E.2d 347, 349 (2003)), and allegations of a defendant's knowledge, especially the defendant's knowledge of someone else's future conduct, are conclusory absent facts that might reasonably lead one to attribute such knowledge to the defendant (*Van Horne v. Muller*, 185 Ill. 2d 299, 313-14, 705 N.E.2d 898, 906 (1998)).

Plaintiff alleges Richland knew, or should have known, that of all of Grand Prairie's buildings in its various facilities, the loader would not fit into one building, building No. 20 in the Apex facility, with the standard roll bar attached. From Grand Prairie's alleged knowledge of that fact, plaintiff invites us to infer that Richland knew, or should have known, that Grand Prairie would remove the roll bar. We conclude that inference is unreasonable.

■ For Richland to incur liability for the modification of the loader, the modification had to have been reasonably foreseeable, and no reasonable trier of fact could find it was. See *DeArmond v. Hoover Ball & Bearing, Uniloy Division*, 86 Ill. App. 3d 1066, 1071, 408 N.E.2d 771, 774 (1980); 63A Am. Jur. 2d *Products Liability* § 1446 (1997). "Foreseeability means that which it is *objectively reasonable* to expect, not merely what might conceivably occur." (Emphasis in original.) *Winnett v. Winnett*, 57 Ill. 2d 7, 12-13, 310 N.E.2d 1, 5 (1974). Foreseeability is ordinarily a question of fact, but if the complaint, on its face, negates foreseeability, it becomes a question of law. *Winnett*, 57 Ill. 2d at 13, 310 N.E.2d at 5. From the mere fact that a single building, building No. 20, had "height restrictions," Richland could not have reasonably expected that Grand Prairie would remove the roll bar from the Wrangler loader instead of, say, use a different piece of equipment in that building. Richland's general manager, Roger Miller, testified in his deposition that in addition to the Wrangler loader, Grand Prairie "had smaller tractors with scoops on them similar to what a backhoe would have." It was conceivable, perhaps, but not reasonably foreseeable, that Grand Prairie would remove the roll bar.

If a safety device hinders the use of a product and the operator can easily remove it without a major alteration of the product, one might reasonably foresee the operator would do so. *Davis v. Pak-Mor Manufacturing Co.*, 284 Ill. App. 3d 214, 220, 672 N.E.2d 771, 775 (1996). In counts III and IV of the proposed third-amended complaint, plaintiff does not allege it was easy, or even possible, for a single operator to remove the roll bar. See *DeArmond*, 86 Ill. App. 3d at 1071, 408 N.E.2d at 774.

■ In fact, the record reveals the roll bar was not easy to remove. It was attached to the body of the loader with eight bolts and also with electrical wires, which one had to cut, and it was so heavy one

had to use a hoist to lift it. In ruling on a motion to amend, the trial court may consider the ultimate efficacy of the amendment in light of the record. *Taylor*, 142 Ill. App. 3d at 591, 491 N.E.2d at 808; *Martin v. Yellow Cab Co.*, 208 Ill. App. 3d 572, 578, 567 N.E.2d 461, 466 (1990). Justice and reason require the disallowance of an amendment that would accomplish nothing. *Bowman v. County of Lake*, 29 Ill. 2d 268, 281-82, 193 N.E.2d 833, 840 (1963). Although it did not take long to remove the roll bar, it was heavy work and apparently a major alteration of the loader, which one cannot reasonably expect Richland to have foreseen (see *DeArmond*, 86 Ill. App. 3d at 1071, 408 N.E.2d at 774). Therefore, given the evidence in the record, counts III and IV of the proposed third-amended complaint would have ultimately accomplished nothing.

■ If the trial court had allowed counts III and IV, those counts would have failed on their merits because by demonstrating the loader at the Ivesdale facility, Richland did all that could be expected, perhaps more than could be expected, of a reasonably prudent retailer. Ordinarily, negligence is a question of fact, but it becomes a question of law if "reasonable [persons] of fair understanding could not disagree as to the conclusions resulting from the facts." *Morrison v. Forest Preserve District*, 155 Ill. App. 3d 687, 689, 508 N.E.2d 312, 313 (1987). Van Lyssel testified he was "familiar with" the buildings at the Apex facility, but that was a far cry from saying he knew the clearance, in inches, of each internal structure of building No. 20. The very purpose of the demonstration, as Van Lyssel testified, was to make sure the loader fit in the structures where Grand Prairie stored grain and fertilizer. Surely, Richland was entitled to treat the agents of Grand Prairie as adults and expect them to meet Van Lyssel halfway in this endeavor, by telling him if other buildings in other facilities were more limited in space than the bins of the Ivesdale facility.

## B. Summary Judgment on the Claim of Strict Products Liability

### 1. *Failure To Warn*

In counts I and II of the third-amended complaint, plaintiff alleged Richland had a duty to warn Grand Prairie of the danger of operating the loader without a roll bar. Whether Richland did indeed have such a duty is a question of law. See *Sollami v. Eaton*, 201 Ill. 2d 1, 7, 772 N.E.2d 215, 219 (2002).

■ On pain of strict liability in tort, a seller must warn a buyer if (1) the product has dangerous propensities, (2) the seller has greater knowledge than the buyer of the risk of harm from those propensities, and (3) the seller knows, or should know, that unless the seller warns

the buyer of that risk, the buyer will suffer harm. *Sollami*, 201 Ill. 2d at 7, 772 N.E.2d at 219; *Woodill v. Parke Davis & Co.*, 79 Ill. 2d 26, 29, 402 N.E.2d 194, 196 (1980). Unequal knowledge of the risk is the *sine qua non* of a duty to warn. *Sollami*, 201 Ill. 2d at 7, 772 N.E.2d at 219. If, from an objective point of view, the danger would be apparent, or "open and obvious," to an ordinary person, the seller has no duty to warn of it. *Sollami*, 201 Ill. 2d at 7, 772 N.E.2d at 219.

■ Plaintiff argues the danger in this case was not apparent because an ordinary person thinks of a roll bar as protection against a rollover, as the name implies, and not as protection against backing into a low-hanging object.

To be precise, however, the dangerous propensity was not the lack of a roll bar but, rather, the loader's propensity, by the force of its engine, to crush the human anatomy. Objectively, an ordinary person would know that without some sturdy intervening structure between the driver and the horsepower of that engine, the engine will prevail. Richland had no duty to warn consumers that if they drove the loader toward a guy wire hanging at chest level, without any protective structure between them and the guy wire, they could get hurt. Everyone already knew that, and the warning would have been pointless. See *Smith v. American Motors Sales Corp.*, 215 Ill. App. 3d 951, 957, 576 N.E.2d 146, 151 (1991). Essentially, plaintiff asks us to impose on Richland a duty to warn against an obvious danger. We decline to do so. See *Sollami*, 201 Ill. 2d at 7, 772 N.E.2d at 219.

### 2. *Unreasonably Dangerous Because Roll Bar Was Readily Removable*

■ In *Suvada v. White Motor Co.*, 32 Ill. 2d 612, 621, 210 N.E.2d 182, 187 (1965), the supreme court adopted section 402A of the Restatement (Second) of Torts, which provides:

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer *** is subject to liability for physical harm thereby caused to the ultimate user or consumer *** if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to *** reach the user or consumer *** in the condition in which it was sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller." Restatement (Second) of Torts § 402A, at 347-48 (1965).

■ Viewing the evidence in a light most favorable to plaintiff and resolving all reasonable inferences in her favor, we consider, *de novo*, whether the pleadings, affidavits, depositions, and admissions in the record create a genuine issue as to the elements in section 402A(1) of the Restatement. See 735 ILCS 5/2—1005(c) (West 2002); *Happel v. Wal-Mart Stores, Inc.*, 199 Ill. 2d 179, 186, 766 N.E.2d 1118, 1123 (2002). If those materials are " 'all of the evidence before the court and upon such evidence there would be nothing left to go to a jury, and the court would be required to direct a verdict,' " we should affirm the summary judgment. *Scoby v. Vulcan-Hart Corp.*, 211 Ill. App. 3d 106, 107-08, 569 N.E.2d 1147, 1148 (1991), quoting *Fooden v. Board of Governors of State Colleges & Universities*, 48 Ill. 2d 580, 587, 272 N.E.2d 497, 500 (1971).

Plaintiff argues Richland sold the Wrangler loader "in a defective condition unreasonably dangerous" in that the roll bar was merely bolted, rather than welded, to the body of the loader and was, therefore, easily removable by operators who had an incentive to remove it, to enable them to drive the loader into low-ceilinged buildings, which were common in the fertilizer industry.

■ In *Lamkin v. Towner*, 138 Ill. 2d 510, 529, 563 N.E.2d 449, 457 (1990), the supreme court held:

"A plaintiff may demonstrate that a product is defective in design, so as to subject a retailer and a manufacturer to strict liability for resulting injuries, in one of two ways: (1) by introducing evidence that the product failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner or (2) by introducing evidence that the product's design proximately caused his injury and the defendant fails to prove that on balance the benefits of the challenged design outweigh the risk of danger inherent in such designs."

In *Scoby*, 211 Ill. App. 3d at 109, 569 N.E.2d at 1149, we called the first method, in the passage quoted above, the "consumer-user contemplation test" and the second method the "danger-utility test." We held that if the dangerous propensity of the product was obvious and the "mechanism involved" was simple, a court should apply the consumer-user contemplation test rather than the danger-utility test. *Scoby*, 211 Ill. App. 3d at 112, 569 N.E.2d at 1151.

The dangerous power of the loader was obvious, and the mechanism of the injury was simple. Therefore, we will apply the consumer-user contemplation test rather than the danger-utility test. See *Scoby*, 211 Ill. App. 3d at 112, 569 N.E.2d at 1151.

■ Plaintiff contends it was reasonably foreseeable that Grand Prairie would remove the roll bar and, therefore, using the loader

without the roll bar was "use[ ] in [a] *** reasonably foreseeable manner." See *Lamkin*, 138 Ill. 2d at 529, 563 N.E.2d at 457. To defeat the motion for summary judgment, however, plaintiff had to come forward with evidence that this reasonably foreseeable manner of using the loader (*i.e.*, without the roll bar) made the loader perform less safely than the ordinary consumer would have expected. See *Lamkin*, 138 Ill. 2d at 529, 563 N.E.2d at 457. An ordinary consumer would have fully expected that if this powerful machine, without a roll bar, pushed his or her body against an unyielding object, injury could result.

In this case, plaintiff falls into essentially the same fallacy as the plaintiffs in *Scoby* and *Smith*: she complains of the lack of a safety device while failing to recognize that the dangerous propensity of the product, without that safety device, was obvious. In *Scoby*, 211 Ill. App. 3d at 108, 569 N.E.2d at 1148-49, the plaintiff argued that a deep-fat fryer, in which he had accidentally submerged his arm, was unreasonably dangerous in that it lacked a cover, which was merely "optional equipment." We agreed with the trial court that "the dangerous nature of the open fryer containing hot oil" was "obvious to the plaintiff." *Scoby*, 211 Ill. App. 3d at 109, 569 N.E.2d at 1149.

In *Smith*, 215 Ill. App. 3d at 953, 576 N.E.2d at 148-49, the plaintiff argued that a Jeep with detachable side doors was unreasonably dangerous in that, with the driver's door removed, it allowed ("invited") him to drive with his left leg extended outside the passenger compartment, on an outside step, making the leg vulnerable when a car struck the driver's side. The First District held that driving the Jeep with one's foot outside the passenger compartment posed an "open and obvious danger," for which the manufacturer could not incur strict products liability. *Smith*, 215 Ill. App. 3d at 959, 576 N.E.2d at 152. Similarly, in the present case, the danger that the driver's body might collide with low-hanging objects is equally obvious to an ordinary person driving a loader without a roll bar.

## III. CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

Affirmed.

TURNER and STEIGMANN, JJ., concur.