SECOND DIVISION

                                   Date Filed: December 27, 2005

No. 1-04-3180

KEEFE-SHEA JOINT VENTURE,                ) Appeal from the

an Illinois Joint Venture,               ) Circuit Court of

                                         ) Cook County.

       Plaintiff-Appellant,              )

                                         )

       v.                                ) No. 01 CH 5242

                                         )

THE CITY OF EVANSTON, an Illinois        )

Municipal Corporation,                   ) Honorable

                                         ) Sophia Hall,

       Defendant-Appellee                ) Judge Presiding.

                                         )

(DiPaolo Company,                        )

                                         )

       
 Intervening Defendant-Appellee).  )

     JUSTICE HALL delivered the opinion of the court:

     This is the third appeal arising from a contract bidding dispute between the plaintiff, Keefe-Shea Joint Venture (Keefe-Shea), the defendant, the City of Evanston (Evanston), and the intervenor, DiPaolo Company (DiPaolo).  Keefe-Shea appeals from an order of the circuit court of Cook County granting summary judgment to Evanston, denying Keefe-Shea's motion for summary judgment, denying its request for a preliminary injunction, denying it leave to amend its complaint and 
terminating the litigation on the grounds of mootness.  
 

     
On appeal, Keefe-Shea raises the following issues: (1) whether the circuit court erred when it denied Keefe-Shea's motion for the entry of a preliminary injunction and failed to award the Phase VI-B contract to Keefe-Shea; (2) whether the circuit court erred when it granted Evanston's cross-motion for summary judgment and denied Keefe-Shea's motion for summary judgment; (3) whether the circuit court erred when it dismissed Keefe-Shea's remaining claims as moot; and (4) whether the circuit court erred when it denied Keefe-Shea's motion for leave to amend its complaint.
  The pertinent history of this litigation is set forth below.   

Background

     In 1991, Evanston began a multiphase relief storm sewer project.  The contract for Phase VI-B is at issue in this case.  The contract was to be financed by a low interest rate loan from the Illinois Environmental Protection Agency (IEPA).  In order to receive the loan, Evanston agreed to be bound by the rules and regulations promulgated by the IEPA in relation to the loans it makes.  

     In November 2000, Evanston solicited bids for Phase VI-B.  The contract documents given to the prospective bidders were prepared by Evanston and contained specifications with which a prospective bidder would be required to comply in the event it was awarded the project.  Pertinent to the issues in this appeal was the requirement that the bidder use minority and/or women-owned businesses (MBE/WBE) to perform no less than 15% of the awarded contract.  With regard to the MBE/WBE participation, Evanston's contract documents provided that if the bidder was unable to achieve the required MBE/WBE participation, the bidder could seek a waiver or modification of the utilization percentage by submitting a waiver request.  

     Both Keefe-Shea and DiPaolo submitted bids for the contract. Following a hearing,
 the Evanston city council voted to award the Phase VI-B contract to DiPaolo. 

 Court Proceedings Relating to First Appeal

     On March 27, 2001, Keefe-Shea filed suit against Evanston, alleging that Evanston was required by law and its own ordinances to award the contract to the lowest responsible bidder.  The complaint further alleged that DiPaolo was not the lowest responsible bidder due, 
inter
 
alia
, to its failure to comply with required procedure to obtain a MBE/WBE participation waiver.  On April 20, 2001, DiPaolo was granted leave to intervene as a defendant.  In its second amended complaint, filed on April 20, 2001, Keefe-Shea sought temporary and permanent injunctive relief to prevent Evanston from proceeding on the Phase VI-B project with DiPaolo, an order declaring that Keefe-Shea was the lowest responsible bidder on the project and a mandatory injunction requiring Evanston to enter into a contract for Phase VI-B with Keefe-Shea. 

     On May 7, 2001, a hearing commenced on Keefe-Shea's motion for a preliminary injunction.  On May 11, 2001, at the close of Keefe-Shea's case, the circuit court granted the motions of Evanston and DiPaolo for a directed finding pursuant to section 2-1110 of the Code of Civil Procedure (the Code) (735 ILCS 5/2-1110 (West 2000)).  Keefe-Shea filed a timely interlocutory appeal pursuant to Rule 307(a)(1) (188 Ill. 2d R. 307(a)(1)). 

     On August 29, 2001, this court vacated the circuit court's order granting the section 2-1110 motions and denying Keefe-Shea a preliminary injunction.  
Keefe-Shea Joint Venture, Inc. v. City of Evanston
, No. 1-01-2034 (2001) (unpublished order under Supreme Court Rule 23 (166 Ill. 2d R. 23)).  The case was remanded to the circuit court with instructions to the circuit court to make specific findings of fact and conclusions of law and to set forth the reasons for its determinations as to each of the elements necessary for the granting of a preliminary injunction
.  

Court Proceedings Related to Second Appeal

     On November 20, 2001, the circuit court issued its written opinion denying the motion for a preliminary injunction.  Keefe-Shea filed an interlocutory appeal from that denial.

     In the second appeal, this court rejected the circuit court's determination that Keefe-Shea had not established a 
prima
 
facie
 case as to the elements of irreparable harm and an inadequate remedy at law.  This court held that an unsuccessful bidder may establish the element of irreparable harm by evidence that it was denied the right to participate in a fair bidding process and that the harm to bidders and the public alike would continue unabated unless the governmental body was enjoined from maintaining an unfair bidding process.  We concluded that Keefe-Shea had established a 
prima
 
facie
 case that Evanston had not awarded the contract to the lowest, responsive, responsible bidder based on DiPaolo's failure to comply with the MBE/WBE waiver requirements.  As a result, Keefe-Shea had no adequate remedy at law.   
Keefe-Shea Joint Venture v. City of Evanston
, 332 Ill. App. 3d 163, 175-77.
 773 N.E.2d 1155 (2002).  

     Noting that the purpose of a preliminary injunction is to preserve the status quo pending a decision on the merits, 
this court stated as follows:

     "We conclude that the record presents a 
prima
 
facie
 case that [Keefe-Shea} would suffer the greater hardship if the preliminary injunction was denied and, therefore, a preliminary injunction is necessary in order to preserve the status quo.  This determination is based upon the record before us and does not and cannot consider any evidence the defendants may present about the hardship to the citizens of Evanston from the delay in constructing the relief storm sewer project."  
Keefe-Shea Joint Venture
, 332 Ill. App. 3d at 178.

This court reversed the denial of the preliminary injunction and remanded the case "for a continuation of the hearing and the presentation of evidence on behalf of Evanston and DiPaolo."  
Keefe-Shea Joint Venture
, 332 Ill. App. 3d at 178.  

Court Proceedings Related to Present Appeal

     This court's mandate was filed in the circuit court on November 4, 2002.  On January 2, 2003, the circuit court granted Keefe-Shea's motion to reopen limited discovery.  On March 11, 2003, the circuit court granted Keefe-Shea's motion to compel compliance with all outstanding discovery.  On May 19, 2003, Keefe-Shea filed a motion for leave to file a third amended complaint.  The proposed complaint added a count seeking a declaration that the Phase VI-B contract between Evanston and DiPaolo was null and void.  On June 19, 2003, the circuit court granted Keefe-Shea leave to file its third amended complaint.  On July 18, 2003, DiPaolo filed its answer, affirmative defenses and a counterclaim for declaratory judgment.  On July 29, 2003, the circuit court ordered, 
inter
 
alia
, all outstanding discovery, including witness lists, to be complied with by August 19, 2003.  

     On October 8, 2003, Evanston sought leave to file its verified counterclaim for a declaratory judgment that it had the right to terminate the Phase VI-B contract pursuant to article 108.12 of the Illinois Department of Transportation's
 
Standard Specifications for Bridges and Road Construction (1997) 
and the Illinois Administrative Code (35 Adm. Code §360 app. A, par. 18.4 (Conway-Green CD Rom 2003)).
  According to Evanston, the delays in the completion of the Phase VI-B project, stemming from the protracted litigation in this case, had caused the projected costs of completing Phase VI-B to increase substantially and to become financially burdensome to the Evanston taxpayers.  

     On October 14, 2003, this court entered an order modifying the June 27, 2001, injunction to permit Evanston to take bids on and to complete the emergency sewer work necessary to the public health and safety.   Except for the emergency work specified, the June 27, 2001, injunction remained in full force and effect.  

     On January 8, 2004, Keefe-Shea filed a motion for the entry of a preliminary injunction order.  Keefe-Shea relied on this court's ruling that Keefe-Shea had established a 
prima
 
facie
 case entitling it to a preliminary injunction and on Evanston's failure to identify any new evidence.  On January 9, 2004, Keefe-Shea filed a motion for leave to amend its complaint to add a prayer for attorney fees and moved for summary judgment on Evanston's counterclaim for declaratory judgment.  On February 17, 2004, Evanston filed a cross-motion for summary judgment on its counterclaim for declaratory judgment.  Evanston maintained that, given its right to terminate the Phase VI-B contract, Keefe-Shea's requests for injunctive relief and 
mandamus
 were moot.    

     On October 20, 2004, the circuit court entered an order denying Keefe-Shea's motion for the entry of a preliminary injunction, denying Keefe-Shea's motion for leave to amend its complaint, denying Keefe-Shea's motion for summary judgment, denying Keefe-Shea's motion to correct the record, denying Keefe-Shea's motion for a stay pending appeal and granting Evanston's cross-motion for summary judgment.  This timely appeal followed.

ANALYSIS

I. Denial of Preliminary Injunction Motion

   A. 
Standard of Review

     The decision to grant or deny a preliminary injunction rests within the sound discretion of the trial court, and a reviewing court will not disturb the decision absent a clear abuse of discretion.  
Keefe-Shea Joint Venture
, 332 Ill. App. 3d at 167.  A trial court abuses its discretion only where no reasonable person would take the view adopted by the trial court.  
In re Marriage of Schneider
, 214 Ill. 2d 152, 173, 824 N.E.2d 177 (2005).

B. 
Discussion

     Keefe-Shea argues that this court's determination that it had established a 
prima
 
facie
 case that the bidding process in this case was unfair, and the failure of Evanston or DiPaolo to present any evidence to the contrary, entitles it to a preliminary injunction.  Keefe-Shea maintains that it has been ready to proceed with the hearing for two years.  However, 
the circuit court permitted Evanston and DiPaolo to delay the proceedings and avoid having to comply with this court's mandate to continue the preliminary injunction hearing.

     Keefe-Shea cites no authority for its argument that the mere failure to proceed with the hearing entitles it to a preliminary injunction and, therefore, the argument is waived pursuant to Supreme Court Rule 341(e)(7).  Official Reports Advance Sheet No. 21 (October 17, 2001), R. 341(e)(7), eff. October 1, 2001. 

     Next, Keefe-Shea argues that the circuit court erred when it deviated from this court's mandate, ordering the continuation of the preliminary injunction hearing, and allowed Evanston and Dipaolo to raise new matters.   Pursuant to this court's mandate, this case was remanded to the circuit court "for a continuation of the hearing and the presentation of evidence on behalf of Evanston and DiPaolo" and that the "judgment of the circuit court is reversed and the cause remanded with directions."  
Keefe-Shea Joint Venture
, 332 Ill. App. 3d at 178.

     "The mandate of a reviewing court is the transmittal of that court's judgment to the circuit court, which revests the latter with jurisdiction."  
Mancuso v. Beach
, 187 Ill. App. 3d 388, 391, 543 N.E.2d 256 (1989).  The correctness of the trial court's action is to be determined by the appellate court's mandate, as opposed to the appellate court opinion.  
PSL Realty Co. v. Granite Investment Co.
, 86 Ill. 2d 291, 308, 427 N.E.2d 563 (1981). 

     "After a judgment is reversed and the cause is remanded, the trial court can hold only such further proceedings as conform to the judgment of the appellate tribunal."  
Clemons v. Mechanical Devices Co.
, 202 Ill. 2d 344, 352-53, 781 N.E.2d 1072 (2002).  "It is well established that '"where the directives of a reviewing court are specific, a positive duty devolves upon the court to which the cause is remanded to enter an order or decree in accordance with the directions contained in the mandate.  Precise and unambiguous directions in a mandate must be obeyed."'
"  
Bond Drug Co. of Illinois v. Amoco Oil Co.
, 323 Ill. App. 3d 190, 196, 751 N.E.2d 586 (2001), quoting 
Puritan Finance Corp. v. Gumdrops, Inc.
, 101 Ill. App. 3d 888, 890, 428 N.E.2d 950 (1981), quoting 
Stuart v. Continental Illinois National Bank & Trust Co.
, 75 Ill. 2d 22, 27-28, 387 N.E.2d 312 (1979), and citing 
Smith v. Farmer's State Bank
, 392 Ill. 456, 64 N.E.2d 879 (1946).  "When the circuit court's action upon remand is inconsistent with the reviewing court's mandate, it is subject to reversal on appeal."  
Mancuso
, 187 Ill. App. 3d at 391.
 

     In the present case, this court's mandate directed the circuit court to continue the preliminary injunction hearing and for Evanston and DiPaolo to present evidence.
  Keefe-Shea maintains that it made numerous requests for the resumption of the preliminary injunction hearing.
  
While it is not disputed that the preliminary injunction hearing was not resumed, the record indicates that the failure to proceed with the hearing stemmed from Keefe-Shea's actions following remand.
  Instead of proceeding to hearing, Keefe-Shea opted to continue discovery and sought leave to file an amended complaint.  Keefe-Shea's actions prompted the filing of additional pleadings by Evanston and DiPaolo.  A party may not request that a court proceed in one manner and then later contend on appeal that the course of action was in error.  See 
People v. Carter
, 208 Ill. 2d 309, 319, 802 N.E.2d 1185 (2003).  

     Keefe-Shea then argues that Evanston's attempt to terminate the contract should not be allowed to defeat its request for a preliminary injunction.  Keefe-Shea relies on this court's determination that, as a necessary corollary to the duty owed to a bidder to award the contract to the lowest, responsive, responsible bidder, a bidder has the right to participate in a fair bidding process.  
Keefe-Shea
, 332 Ill. App. 3d at 172.  Keefe-Shea maintains that without the entry of a preliminary injunction, it and all other bidders in similar situations revert to the same position as when the unfair bidding process was first challenged.

     Keefe-Shea claims that it is entitled to have the Phase VI-B contract awarded to it, relying on 
Broadmoor, L.L.C. v. Ernest N. Morial New Orleans Exhibition Hall Authority
, 867 So.2d 651 (La. 2004).  In that case, the plaintiff-bidder sought to restrain the defendant from considering or awarding a contract to Yates/Landis,
 another bidder, alleging irregularities with Yates/Landis's bid.  The trial court initially restrained the defendant from awarding the contract, but following a hearing, rescinded the order.  The defendant then accepted Yates/Landis's bid.  Following another hearing, the trial court denied the plaintiff's request for a preliminary injunction.  The court of appeal reversed.  The supreme court affirmed the court of appeal's conclusion that the defendant had impermissively waived the bid requirements and abused its discretion when it selected Yates/Landis as the lowest, responsive bidder.  The defendant was ordered to reject Yates/Landis's bid as nonresponsive.  
Broadmoor
, 867 So.2d at 663-64.

     
Unlike the present case, in 
Broadmoor
 the trial court conducted a hearing on the request for a preliminary injunction before denying it.  The preliminary injunction hearing in this case was never completed.  
New Orleans Rosenbush Claims Service, Inc. v. City of New Orleans
, 653 So.2d 538 (La. 1995), is likewise distinguishable 
because the trial court there held a hearing prior to ruling on the motion for preliminary injunction and the request for 
mandamus
.  

     We conclude that Keefe-Shea was not entitled to the entry of a preliminary injunction or to a writ of 
mandamus
 awarding it the Phase VI-B contract.

II.  Summary Judgment 

A. 
Standard of Review

     The court reviews motions for summary judgment 
de
 
novo
.  
Chubb Insurance Co. v. DeChambre
, 349 Ill. App. 3d 56, 59, 808 N.E.2d 37 (2004).  

B. 
Applicable Summary Judgment Principles

     Summary judgment is proper if, and only if, the pleadings, depositions, admissions, affidavits and other relevant matters on file show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.  
DeChambre
, 349 Ill. App. 3d at 59.  A triable issue precluding summary judgment exists where material facts are disputed or where reasonable persons might draw different inferences from undisputed facts.  
DeChambre
, 349 Ill. App. 3d at 59.  

     By filing cross-motions for summary judgment, the parties invite the court to determine the issues as a matter of law and enter judgment in favor of one of the parties.  
Wolfram Partnership, Ltd. v. LaSalle National Bank
, 328 Ill. App. 3d 207, 765 N.E.2d 1012 (2001).  Summary judgment should only be allowed when the right of the moving party is clear and free from doubt.  
Elliott v. Williams
, 347 Ill. App. 3d 109, 112, 807 N.E.2d 506 (2004).  

C. 
Discussion

1. Article 108.12

     Evanston maintained that it had the right to terminate the Phase VI-B contract with DiPaolo, based on article 108.12 of the Illinois Department of Transportation's 
Standard Specifications for Bridges and Road Construction (1997).  Article 108.12 provides in pertinent part as follows:

"The Department
(footnote: 1) may, by written order, terminate the contract or any portion thereof after determining that for reasons beyond either Department or Contractor control, the Contractor is prevented from proceeding with or completing the work as originally contracted for, and that termination would, therefore, be in the public interest.  Such reasons for termination may include, but need not be necessarily limited to, Executive Orders of the President relating to prosecution of war or national defense, national emergency which creates a serious shortage of materials, orders from duly constituted authorities relating to energy conservation, and restraining orders or injunctions obtained by third-party citizen action resulting from national or local environmental protection laws or where the issuance of such order or injunction is primarily caused by acts or omissions of persons or agencies other than the Contractor."

Evanston asserts that, due to this court's June 27, 2001, injunction order, DiPaolo was prevented from proceeding with or completing the work originally contracted.  Moreover, given the escalation in costs and the health and safety risks posed by the unfinished project, the public interest required that the contract be terminated.  

      Keefe-Shea argues that Evanston failed to establish that the termination was in the public interest since, in the October 14, 2003, order, this court permitted the work necessary in the public interest to be completed.  However, this court's order dealt with an emergency situation and not with the effect on the public if the Phase VI-B project was never completed.

     Keefe-Shea then argues that Evanston should not be permitted to terminate the contract pursuant to article 108.12 because Evanston's unfair bidding practice caused the imposition of this court's injunction order and, therefore, it was not beyond Evanston's or DiPaolo's control.  
"Control" is defined as "the power or authority to manage, direct, or oversee."  Black's Law Dictionary 330 (7th ed. 1999).  The entry of this court's injunction order was to maintain the status quo.  At the time of the termination of the litigation in this case, all that had been determined was that Keefe-Shea had established a 
prima
 
facie
 case that the bidding process was unfair, not that the bidding process was in fact unfair.
 Therefore, it cannot be said that the imposition of this court's injunction was within the control of either Evanston or DiPaolo.

     Finally, Keefe-Shea argues that allowing Evanston to terminate the Phase VI-B contract undermines this court's holding that Keefe-Shea was entitled to a fair bidding process.  The authorities relied on by Keefe-Shea, 
Funderburg Builders, Inc. v. Abbeville County Memorial Hospital
, 467 F. Supp. 821 (D. S.C. 1979), 
Entech Corp. v. City of Newark
, 351 N.J. Super. 440, 798 A.2d 681 (2002), and 
Shaeffer v. City of Landcaster
, 754 A.2d 719 (Commw. Ct. Pa. 2000), recognize that if the bidding process is unfair it must be overturned, and the contract awarded to the lowest responsible bidder.  However, in the present case, the final determination as to the fairness of the bidding process was never made.  

2. Termination Upon Written Notice

     Evanston also maintained that it had the right to terminate the Phase VI-B contract by giving written notice to both DiPaolo and Keefe-Shea pursuant to section 360 appendix A (35 Adm. Code §360 app. A, par. 18.4 (Conway-Green CD Rom 2003)).   That section provides in pertinent part as follows:

"After ten (10) days from delivery of a WRITTEN NOTICE to the CONTRACTOR and the ENGINEER the OWNER may, without cause and without prejudice to any other right or remedy elect to abandon the PROJECT and terminate the CONTRACT in such case, the CONTRACTOR shall be paid for all WORK executed and any expense sustained plus reasonable profit."  35 Adm. §360 app. A, 18.4 (Conway-Green CD Rom 2003).

     Keefe-Shea argues that Evanston has not abandoned the project and therefore is not entitled to terminate the Phase VI-B contract.  Keefe-Shea relies on the deposition testimony of Roger Crum, taken after the case was remanded following the second appeal.  
According to Mr. Crum, the work contemplated in the Phase VI-B contract would be completed in the future. 
 Keefe-Shea defines  "abandon," as "to give up with the intent of never claiming a right or interest in." 

     However, as acknowledged by Keefe-Shea, the contract defines the "project" as "the undertaking to be performed as provided in the CONTRACT DOCUMENTS."  It is clear that the "project" contemplated by the contract for Phase VI-B cannot be constructed as originally planned.  As a result, the project will be reconstructed and a new contract proposed, incorporating the changes necessitated by the delays and the increased costs.  We agree with Evanston that the project as originally set forth in the Phase VI-B contract has been abandoned.

     We conclude that Evanston had the right to terminate its contract with Dipaolo under 
either article 108.12 
or section 360, appendix A.  Accordingly, the circuit court did not err in awarding summary judgment to Evanston on its counterclaim for declaratory judgment, and in denying Keefe-Shea's motion for summary judgment.

III. Remaining Claims

     Keefe-Shea contends that the circuit court erred when it held that the termination of the Phase VI-B contract rendered Keefe-Shea's remaining claims moot.  

     "A claim is moot when no actual controversy exists or events occur which make it impossible for a court to grant effectual relief."  
Duncan Publishing, Inc. v. City of Chicago
, 304 Ill. App. 3d 778, 782, 709 N.E.2d 1281 (1999).  Actions will be dismissed once plaintiffs have secured what was originally sought.  
Duncan Publishing, Inc.
, 304 Ill. App. 3d at 782.

     Initially, Keefe-Shea argues that the termination of the contract did not dissolve this court's injunction.  Keefe-Shea maintains that Evanston must establish a change in the law or that equity no longer justifies the continuance of the injunction before the injunction will be modified or dissolved.  
Flynn v. Kucharski
, 53 Ill. 2d 88, 290 N.E.1 (1972).

     The June 27, 2001, order provided that Evanston and DiPaolo were "to refrain from commencing any work on the construction project that is the subject of this appeal until further order of this court."  Nothing in the order restrained Evanston from terminating the contract.  Moreover, this court's order was entered to preserve the status quo pending the outcome of Keefe-Shea's request for preliminary and permanent injunctive relief.  An interlocutory injunction becomes 
functus
 
officio
(footnote: 2) when the case is disposed of on the merits.  
House of Vision, Inc. v. Hiyane
, 58 Ill. App. 2d 431, 439, 208 N.E.2d 390 (1965).  A preliminary injunction cannot survive the dismissal of a complaint.  
Venezia v. Robinson
, 16 F.3d 209, 211 (7th Cir. 1994).   

     Keefe-Shea maintains that the termination of the contract cannot moot its claims for the costs it incurred, including attorney fees, in "getting the misaward recinded."  Keefe-Shea relies on several cases holding that damages and costs may be awarded to a bidder who succeeds in getting an improperly awarded contract rescinded.  See 
Owen of Georgia, Inc. v. Shelby Cpunty
, 648 F.2d 1084 (6th Cir. 1981); 
Ritchie Paving, Inc. v. City of Deerfield
, 275 Kan. 631, 67 P.3d 843 (2003); 
City of Sweetwater v. Solo Construction Co.
, 823 So.2d 798 (Fla. App. 2002); 
Telephone Associates, Inc. v. St. Louis County Board
, 364 N.W.2d 378 (Minn. 1985).

     However, Keefe-Shea did not succeed in overturning the award of the contract to DiPaolo.  Contrary to Keefe-Shea's argument on appeal, this court did not find that the contract was improperly awarded to DiPaolo, only that Keefe-Shea had established a 
prima
 
facie
 case that Evanston's bidding process was unfair.  The hearing on the preliminary injunction was never completed.  As a result of the termination of the contract, there was no determination on the merits that the bidding process was unfair.  Therefore, Keefe-Shea has no basis upon which to recoup its costs because there was no determination that the Phase VI-B contract was improperly awarded.  

     Finally, Keefe-Shea maintains that the circuit court erred when it did not grant its motion to correct the record.  Keefe-Shea failed to provide any argument or citation to authority in support of its claim of error.  Therefore, it is waived.  Official Reports Advance Sheet No. 21 (October 17, 2001), R. 341(e)(7), eff. October 1, 2001.  

     We conclude that Evanston's termination of the Phase VI-B contract with DiPaolo rendered Keefe-Shea's remaining claims moot.

IV. Denial of Leave to Amend Complaint

     Keefe-Shea contends that the circuit court erred when it denied it leave to amend its complaint to include a request for attorney fees.

A. 
Standard of Review

     The standard of review for the denial of a motion for leave to file an amended complaint is whether the trial court abused its discretion.  
Bureau Service Co. v. King
, 308 Ill. App. 3d 835, 840, 721 N.E.2d 159 (1999).  An abuse of discretion will be found only where no reasonable person would take the view adopted by the trial court.  
Dawdy v. Union Pacific R.R. Co.
, 207 Ill. 2d 167, 177, 797 N.E.2d 687 (2003).  Given the broad discretion a trial court exercises in ruling on motions to amend pleadings prior to judgment, a court should not find that the denial of a motion to amend is prejudicial unless there has been a manifest abuse of such discretion.  
Loyola Academy v. S & S Roof Maintenance, Inc.
, 146 Ill. 2d 263, 273-74, 586 N.E.2d 1211 (1992).

B. 
Discussion

     Under section 2-616(a) of the Code, at any time before  final judgment, the court may permit amendments on just and reasonable terms to enable the plaintiff to sustain the claim brought in the suit.  See 735 ILCS 5/2-616(a) (West 2004).  "In

section 2-616, the legislature expressed its intention that no mere deficiency in pleading deprive a party of his or her day in court but that, consonant with justice and reason, the court allow the party to replead so that substantive merit, rather than pleading technicalities, decide the outcome of the case."  
Bates v. Richland Sales Corp.
, 346 Ill. App. 3d 223, 230, 803 N.E.2d 977 (2004).  Generally, when a party asks to amend a complaint, leave to do so is freely given.  
People v. Scullark
, 325 Ill. App. 3d 876, 880, 759 N.E.2d 565 (2001).

     "Despite that liberal policy, the right to amend is not absolute."  
Bates
, 346 Ill. App. 3d at 230.  In order to determine whether the circuit court abused its discretion in denying a motion to file an amended complaint, the court looks at four factors: (1) whether the proposed amendment would cure the defective pleading; (2) whether the parties would sustain prejudice or surprise by virtue of the proposed amendment; (3) whether the proposed amendment is timely; and (4) whether previous opportunities to amend the pleading could be identified.  
Bureau Service Co.
, 308 Ill. App. 3d at 840.  If the amendment would not have cured a defect in the pleading, the other factors are superfluous.  
Bates
, 346 Ill. App. 3d at 230.

     Initially, Keefe-Shea argues that the circuit court erred when it denied its motion for leave to amend as moot with no explanation.  Keefe-Shea cites no authority requiring the court to provide an explanation for its dismissal of a case, and therefore the argument is waived.  Official Reports Advance Sheet No. 21 (October 17, 2001), R. 341(e)(7), eff. October 1, 2001.  In any event, as previously noted, even assuming an award of attorney fees would be available to a disappointed bidder who succeeded in overturning an improper contract award, Keefe-Shea would not be entitled to such an award in this case because the Phase VI-B contract was terminated prior to a determination on the merits that the contract was improperly awarded.  Likewise, Keefe-Shea's argument that it was entitled to an equitable settlement pursuant to article 108.12 fails; Keefe-Shea was not the contractor on the Phase VI-B project, and there was no determination that it should have been named the contractor on the Phase VI-B project.  

     Keefe-Shea then argues that, assuming the termination of the contract was proper, the attorney fees issue was triggered, rather than mooted, by the termination pursuant to the provisions of section 360 appendix A, a part of the Phase VI-B contract.  Under that section, upon termination of the contract, the contractor is entitled to be paid for all work executed and any expense sustained plus a reasonable profit.  
35 Adm. Code §360 app. A, par. 18.4 (Conway-Green CD Rom 2003). 

     Longstanding precedent in Illinois requires that attorney fees be specifically authorized by statute or contract.  
International Federation of Professional & Technical Engineers, Local 153 v. Chicago Park District
, 349 Ill. App. 3d 546, 552, 812 N.E.2d 407 (2004) (
IFPTE
).  There is no common law principle allowing attorney fees either as costs or damages.  
Qazi v. Ismail
, 50 Ill. App. 3d 271, 273, 364 N.E.2d 595 (1977); see 
IFPTE
, 349 Ill. App. 3d at 552 (an award of "disbursements" did not include attorney fees).  In 
Qazi
, the court noted that, in interpreting statutory provisions, courts have refused to interpret imprecise language as permitting attorney fees.  The 
Qazi
 court applied the same rule of construction to a contractual provision and determined that the term "consequences" did not include attorney fees.  
Qazi
, 50 Ill. App. 3d at 273.  

     Keefe-Shea cites no authority construing the term "expense" to include attorney fees.  Moreover, as Keefe-Shea notes, the term "expense" may not be viewed by itself but in reference to the contract as a whole.  
La Throp v. Bell Federal Savings & Loan Ass'n
, 68 Ill. 2d 375, 381, 370 N.E.2d 188 (1977).  Under section 360 app. Appendix if the contract is terminated, the contractor is "paid for all WORK executed and any expense sustained plus reasonable profit."  Clearly, that provision is intended to compensate the contractor for the work and the expenses he incurred in performing the work, not the expenses he incurred contesting whether the contract could be terminated.  See 
Singleton v. County of Cook
, 53 Ill. App. 3d 994, 996, 369 N.E.2d 227 (1977) (attorney fees not recoverable under agreement language that contractor was to indemnify and hold harmless the County against all loss, damage and expense it might sustain as the result of any suits, actions or claims; the agreement did not even refer to attorney fees and costs).  

     In the absence of any statutory or contractual provision authorizing the award of attorney fees in this case, Keefe-Shea is not entitled to an award of attorney fees.  As the proposed amendment would not cure any defect in Keefe-Shea's pleadings, the circuit court did not abuse its discretion in denying Keefe-Shea's motion for leave to amend its complaint.

     For all of the foregoing reasons, the judgment of the circuit court is affirmed.

     Affirmed.

     WOLFSON and SOUTH, JJ., concur.

     

      
   

     

     

 

      

      

     

FOOTNOTES
1:
The term "Department" in this context refers to the City of Evanston.  See article 101.13 of the Illinois Department of Transportation's Standard Specifications for Bridges and Road Construction (1997).

2:
"[W]ithout further authorization or legal competence because the duties and functions of the original commission have been fully accomplished."  Black's Law Dictionary 682 (7th ed. 1999).