Barrett, Circuit Judge.
The parties cast this case as one about arbitral immunity, which is the ground on which the district court dismissed the complaint. It turns out, however, that the case is really about federal jurisdiction. We asked the parties to submit supplemental briefs on this question, and they both contend that subject matter jurisdiction exists. Their strongest argument is grounded in the diversity statute, but the amount in controversy requirement presents an obstacle: the complaint satisfies it only if Illinois law permits the plaintiffs to recover their legal expenses from the underlying arbitration, this suit, or both. We conclude that while Illinois law permits the recovery of legal fees as damages in limited circumstances, those circumstances are not present here.
I.
In October 2013, brokers Nicholas Webb and Thad Beversdorf were fired by their employer, Jefferies & Company, Inc. ("Jefferies"). They decided to challenge their termination, and, as their employment contracts with Jefferies demanded, they filed their claims in the Financial Industry Regulatory Authority's ("FINRA") arbitration forum. FINRA required them to sign an "Arbitration Submission Agreement,"
*856 which they did, and their dispute with Jefferies proceeded in arbitration for the next two-and-a-half years. They withdrew their claims before a final decision was rendered. Under FINRA's rules, that withdrawal constituted a dismissal with prejudice.
After the arbitration failed, Webb and Beversdorf sued FINRA in the Circuit Court of Cook County, Illinois, alleging that FINRA breached its contract to arbitrate their dispute with Jefferies. They faulted FINRA for a number of things, including failing to properly train arbitrators, failing to provide arbitrators with appropriate procedural mechanisms, interfering with the arbitrators' discretion, and failing to permit reasonable discovery. They sought damages "in an amount in excess of $50,000" and a declaratory judgment identifying specified flaws in FINRA's Code of Arbitration Procedure. FINRA removed the dispute to federal court, where it moved to dismiss on multiple grounds, including arbitral immunity. The district court held that FINRA was entitled to arbitral immunity and dismissed the suit. Webb and Beversdorf appeal this judgment.
II.
Neither side has raised a jurisdictional challenge, but we have an independent obligation to determine whether we have authority to resolve this dispute. Smith v. American Gen. Life & Acc. Ins. Co. , 337 F.3d 888, 892 (7th Cir. 2003) (citing St. Paul Mercury Indem. Co. v. Red Cab Co ., 303 U.S. 283, 287 n.10, 58 S.Ct. 586, 82 L.Ed. 845 (1938) ). At oral argument, we ordered the parties to submit supplemental briefs on this issue. Both sides argue that diversity jurisdiction exists, and FINRA argues that federal question jurisdiction exists as well. Because the argument for diversity is the stronger of the two, we begin there.
The diversity statute, 28 U.S.C. § 1332, grants jurisdiction when there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs. Complete diversity is not a problem: Webb and Beversdorf are citizens of Illinois and FINRA is a Delaware corporation with its principal place of business in Washington, D.C. Identifying the amount in controversy is more complicated.
After it removed the case to federal court, FINRA initially claimed that the amount in controversy was satisfied because Webb and Beversdorf sought more than $1,000,000 from Jefferies. The district court properly rejected this argument, because we have held that the amount at stake in an underlying arbitration does not count toward the amount in controversy in a suit between a party to the arbitration and the arbitrator. Caudle v. American Arbitration Ass'n , 230 F.3d 920, 922-23 (7th Cir. 2000). Jurisdiction turns on what is at stake between the parties to this suit-Webb and Beversdorf, the plaintiffs, and FINRA, the defendant.
Webb and Beversdorf paid FINRA $1800 at the start of the arbitration; if that is all they lost, the amount in controversy is obviously far short of the jurisdictional mark. They also, however, seek to recover the legal fees that they incurred both in the course of arbitrating against Jefferies and in preparing this lawsuit against FINRA.[1] Webb and Beversdorf say that these fees-which exceed $75,000-were a *857 reasonably foreseeable consequence of FINRA's breach of the Arbitration Submission Agreement. See 24 WILLISTON ON CONTRACTS § 64.12 (4th ed. 2017) ("Consequential damages ... include those damages that ... were reasonably foreseeable or contemplated by the parties at the time the contract was entered into as a probable result of a breach."). The district court accepted this argument and concluded that it had authority to adjudicate the suit.
Legal fees may count toward the amount in controversy if the plaintiff has a right to them "based on contract, statute, or other legal authority." Ross v. Inter-Ocean Ins. Co ., 693 F.2d 659, 661 (7th Cir. 1982), abrogated on other grounds by Hart v.Schering-Plough Corp ., 253 F.3d 272, 274 (7th Cir. 2001). Webb and Beversdorf do not contend that FINRA assumed a contractual obligation to cover either the fees that they incurred in arbitration or those that they incurred in this lawsuit. That leaves statute or other authority. The parties agree that Illinois law governs, so we look there to determine whether Webb and Beversdorf could plausibly recover any of these legal fees as damages.
It is clear that Webb and Beversdorf cannot recover the money spent preparing to litigate against FINRA. Illinois generally adheres to the American Rule that each party bears its own litigation costs. Duignan v. Lincoln Towers Ins. Agency, Inc ., 282 Ill.App.3d 262, 217 Ill.Dec. 519, 667 N.E.2d 608, 613 (1996). Its common law does not authorize a prevailing party to recover attorneys' fees from an opponent. Ritter v. Ritter , 381 Ill. 549, 46 N.E.2d 41, 43 (1943) ; see also Keefe-Shea Joint Venture v. City of Evanston , 364 Ill.App.3d 48, 300 Ill.Dec. 800, 845 N.E.2d 689, 702 (2005). Any right to recovery must derive from contract or statute, Ritter , 46 N.E.2d at 43 ; Fednav Int'l Ltd. v. Cont'l Ins. Co ., 624 F.3d 834, 839 (7th Cir. 2010), and Webb and Beversdorf have not identified any contractual or statutory provision giving them that right. They are thus stuck with the longstanding rule that they must bear their own litigation expenses in this suit against FINRA, even if they ultimately win.
But Webb and Beversdorf do not just seek recovery of the legal fees they have incurred litigating against FINRA; they also seek recovery of the legal fees they incurred arbitrating against Jefferies. This is a more plausible ground for recovery, because Illinois recognizes a "third party litigation exception" to the American Rule. The Illinois Supreme Court has held that "where the wrongful acts of a defendant involve the plaintiff in litigation with third parties or place him in such relation with others as to make it necessary to incur expense to protect his interest, the plaintiff can then recover damages against such wrongdoer, measured by the reasonable expenses of such litigation, including attorney fees." Ritter , 46 N.E.2d at 44 ; see also RESTATEMENT (SECOND) OF TORTS § 914 ("One who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover reasonable compensation for loss of time, attorney fees, and other expenditures thereby suffered or incurred in the earlier action."). While the exception arises more frequently in the context of torts than contracts, we assume that Illinois courts would recognize it in the latter context as well. See Colvin v. Monticello Communications, Inc. , No. 91 C 2498, 1994 WL 113051, at *8-9 (N.D. Ill. Apr. 1, 1994) (allowing the recovery of legal fees when the defendant's breach of contract placed the plaintiff in litigation with a third party);
*858 see also City of Cedarburg Light & Water Comm'n v. Glen Falls Ins. Co ., 42 Wis.2d 120, 166 N.W.2d 165, 168 (1969) ("[A] breach of contract as well as tort may be a basis for allowing the present plaintiff to recover reasonable third party litigation expenses."). FINRA-whose desire to be in federal court has motivated it to argue vigorously for a proposition otherwise against its interest-also insists that the "third party litigation exception" to the American Rule applies here and could obligate it to pay for Webb and Beversdorf's legal expenses if it breached the arbitration agreement.
Webb and Beversdorf's effort to recover expenses incurred in an arbitration proceeding begun for its own purposes-to assert a wrongful termination claim against Jefferies-distinguishes this case from those in which Illinois courts have applied the exception. Illinois courts have not applied the exception when the defendant caused the legal fees to increase in an already existing third-party suit; they have applied it when the defendant caused the third-party suit in the first place. The Illinois courts have invariably described the exception as applying when the defendant's wrong forced the plaintiff into litigation with a third party. See, e.g. , Ritter , 46 N.E.2d at 44 (holding that the exception applies "where the natural and proximate consequences of a wrongful act have been to involve the plaintiff in litigation with others" (emphasis added) ); Philpot v. Taylor , 75 Ill. 309, 311 (Ill. 1874) (applying exception where the consequence of the defendant's wrongful act "has been to plunge the plaintiff into a chancery suit " (emphasis added) ); see also Champion Parts, Inc. v. Oppenheimer & Co ., 878 F.2d 1003, 1006 (7th Cir. 1989) (noting that the plaintiff can recover attorneys' fees if "one consequence of the tortfeasor's actions is to involve a person in litigation with others" (emphasis added) ). For example, Illinois courts have permitted plaintiffs to recover legal fees spent settling with an insurance company when the defendant wrongfully caused the company to cancel the plaintiff's policy, Duignan , 217 Ill.Dec. 519, 667 N.E.2d at 613 ; obtaining refunds of tax penalties that were assessed on the plaintiff due to the defendant's negligence, Sorenson v. Fio Rito , 90 Ill.App.3d 368, 45 Ill.Dec. 714, 413 N.E.2d 47, 52 (1980) ; and filing a second divorce petition when the defendant's legal malpractice resulted in the dismissal of the plaintiff's first petition, Nettleton v. Stogsdill , 387 Ill.App.3d 743, 326 Ill.Dec. 601, 899 N.E.2d 1252, 1259 (2008). In all of these instances, the third-party litigation existed because of the defendant's alleged wrong.[2] And when *859 the party seeking the recovery of fees was the plaintiff in the third-party litigation, as Webb and Beversdorf were here, the third-party litigation has been undertaken to "cure the damage caused by the defendant." Duignan , 217 Ill.Dec. 519, 667 N.E.2d at 613.
Webb and Beversdorf did not undertake the arbitration to cure FINRA's breach of contract; they undertook it to resolve an employment dispute with Jefferies. FINRA's alleged breach of the arbitration agreement did not force Webb and Beversdorf into arbitration; it allegedly increased the costs of arbitration they had already begun. The straight-forward causal connection that justified application of the third-party litigation exception in other cases is not present in this suit. Even, then, if FINRA breached its contract with Webb and Beversdorf, that breach would not alleviate Webb and Beversdorf's obligation to shoulder the legal costs associated with their decision to pursue a wrongful termination claim against Jefferies. See Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health & Human Res. , 532 U.S. 598, 602, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001) ("In the United States, parties are ordinarily required to bear their own attorney's fees...."). Illinois courts have consistently described and applied the exception in a way that precludes its application here.[3]
When a defendant removes to federal court, as FINRA did here, its plausible and good faith estimate of the amount in controversy establishes jurisdiction unless it is a "legal certainty" that the plaintiffs' claim is for less than the requisite amount. St. Paul Mercury Indem. Co. , 303 U.S. at 288-89, 58 S.Ct. 586 ; Roppo v. Travelers Commercial Ins. Co. , 869 F.3d 568, 579 (7th Cir. 2017). Here, Illinois law makes it a "legal certainty" that Webb and Beversdorf's claim is for less than the requisite amount.[4] Diversity jurisdiction does not exist.
*860 III.
Webb and Beversdorf leave it at diversity, but FINRA makes an additional argument for federal question jurisdiction.[5] According to FINRA, this dispute is one of the rare state-law causes of action that gives rise to federal question jurisdiction under Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing , 545 U.S. 308, 125 S.Ct. 2363, 162 L.Ed.2d 257 (2005) ; see also Merrill Lynch, Pierce, Fenner & Smith v. Manning , --- U.S. ----, 136 S.Ct. 1562, 1566, 194 L.Ed.2d 671 (2016) (holding that the Grable & Sons test determines the reach of "arising under" jurisdiction for purposes of the jurisdictional grant in the Securities Exchange Act of 1934).[6] Its theory is that the presence of an issue of federal securities law transforms this state-law contract claim into one arising under federal law.
Under Grable & Sons , a state-law claim may satisfy the "arising under" jurisdictional test if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in a federal court without disrupting the federal-state balance. Gunn v. Minton , 568 U.S. 251, 258, 133 S.Ct. 1059, 185 L.Ed.2d 72 (2013) (citing Grable & Sons , 545 U.S. at 314, 125 S.Ct. 2363 ); see also Evergreen Square of Cudahy v. Wisconsin Hous. & Econ. Dev. Auth. , 776 F.3d 463, 466 (7th Cir. 2015). Federal jurisdiction is rarely established on this basis. Hartland Lakeside Joint No. 3 School Dist. v. WEA Ins. Corp. , 756 F.3d 1032, 1033 (7th Cir. 2014). For a state-law claim to arise under a federal securities claim, an issue of federal law must be the "cornerstone" of the plaintiff's complaint. Manning , 136 S.Ct. at 1569.
This dispute does not make it past the first factor of the Grable & Sons test. FINRA contends that because the plaintiffs' suit implicates FINRA's SEC-approved Code of Arbitration Procedure, this case requires us to decide whether FINRA breached a duty it owed Webb and Beversdorf under the securities laws. But FINRA fails to identify a single provision of federal law that we would have to interpret to resolve this case. The question is whether FINRA breached its arbitration agreement, and no "inescapable" provision of federal law drives that analysis. Hartland , 756 F.3d at 1035. To be sure, FINRA is regulated by the SEC, and its duties under the federal securities laws might come up. But that does not make federal law the "cornerstone" of the plaintiff's complaint. Manning , 136 S.Ct. at 1569. The Supreme Court has emphasized that a "federal role" is not enough. Id.
*861 As for the rest of the Grable & Sons test, an issue not raised cannot be actually disputed or substantial, and without any federal question necessarily in play, we need not consider how taking the question would affect the federal-state balance. This is a state-law contract claim, and FINRA's effort to pull it within federal question jurisdiction fails.
IV.
We VACATE the judgment for lack of jurisdiction and REMAND the case to the district court with instructions to remand to state court.

In their supplemental briefs, Webb and Beversdorf stress the legal fees they incurred in "preparing to litigate" against FINRA, presumably because they recognize that the amount in controversy requirement must be satisfied at the time the lawsuit is filed in or removed to federal court. Gardynski-Leschuck v. Ford Motor Co ., 142 F.3d 955, 958 (7th Cir. 1998) ("[J]urisdiction depends on the state of affairs when the case begins; what happens later is irrelevant."). Even if they seek recovery of legal fees incurred after the case was removed, those fees cannot count toward the amount in controversy.

The dissent cites Certain Underwriters at Lloyd's, London v. Johnson &Bell, Ltd. , No. 10 C 7151, 2011 WL 3757179 (N.D. Ill. Aug. 25, 2011), as persuasive authority for the proposition that Illinois law would permit the recovery of fees not only when the defendant forced the plaintiff into litigation, but also when the defendant increased the plaintiff's expenses in otherwise existing litigation. It is, of course, the decisions of Illinois courts that control our interpretation of Illinois law. In any event, however, Certain Underwriters is consistent with our view of Illinois law. There, an insurer brought a legal malpractice action against a law firm that represented it in two underlying suits. The district court held that Illinois law would permit the plaintiff to recover attorneys' fees in one of the underlying suits based on the plaintiff's allegation that "it would not have undertaken its representation of [the insured] in the underlying ... lawsuit but for defendants' advice." In other words, but for the defendants' negligence, the plaintiff would not have been involved in the third-party litigation. Id. at *5. The district court also held that Illinois law would permit the plaintiff to recover the cost of hiring new counsel to correct the defendants' failure to sue a necessary party in both of the underlying suits. Id. at *6. Certain Underwriters tracks the Illinois cases because it permits recovery of attorneys' fees paid to new counsel in an attempt to "cure the damage," Duignan , 217 Ill.Dec. 519, 667 N.E.2d at 613. Like the plaintiffs in Nettleton v. Stogsdill and Sorenson v. Fio Rito -and unlike Webb and Beversdorf here-the plaintiffs in Certain Underwriters did not seek recovery of inflated expenses incurred in the course of the initial, flawed litigation; they sought recovery of fees paid to replacement counsel hired to fix the defendants' mistakes.

We do not reach this conclusion simply because the cases have all involved a defendant whose wrong forced the plaintiff to bring or defend a third-party lawsuit. See Dissenting Op. at 862-63 (observing that the "frequent occurrence of a fact pattern does not impose an analytical limitation on a principle unless some animating component of that principle limits application to the particular fact pattern."). While we do not think the uniform occurrence of this fact pattern irrelevant, our conclusion is driven by the way that the Illinois courts (and, for that matter, the Restatement (Second) of Torts , see supra at 857-58) state the rule governing the recovery of third-party litigation expenses: they invariably include this limitation. The limit is not irrational; indeed, we can imagine reasons why Illinois might want to draw a line between attorneys' fees clearly attributable to the defendant's breach and those that are harder to sort out.

The dissent argues that the "legal certainty" standard, St. Paul Mercury Indem. Co. , 303 U.S. at 289, 58 S.Ct. 586, requires a federal court, where possible, to construe state law to allow the recovery of damages. Dissenting Op. at 864. That is not how the "legal certainty" standard works. The court first decides whether, assuming the facts the plaintiff alleges are true, state law allows recovery of the damages the plaintiff seeks. If state law forecloses recovery of the damages, it is certain that the claim is for less than the jurisdictional amount. Otherwise, the court accepts the plaintiff's good faith valuation of the claim. See Anthony v. Sec. Pac. Fin. Servs., Inc. , 75 F.3d 311, 315 (7th Cir. 1996) (applying this two-step inquiry) ; see also St. Paul Mercury Indem. Co. , 303 U.S. at 288, 58 S.Ct. 586 ("The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls."). The point of the "legal certainty" test is not to guide the court's interpretation of state law, but to save the court from having to make difficult predictions about whether and how much the plaintiff is likely to win. Meridian Sec. Ins. Co. v. Sadowski , 441 F.3d 536, 543 (7th Cir. 2006) ("[U]ncertainty about whether the plaintiff can prove its substantive claim, and whether damages (if the plaintiff prevails on the merits) will exceed the threshold, does not justify dismissal."). To that end, the test distinguishes between the law (which can render a claim's value certain) and the facts (which, if plausible, cannot). So far as we can tell, the suggestion that the "legal certainty" standard requires a federal court to accept the plaintiff's good-faith characterization of the law, as opposed to the plaintiff's good-faith valuation of his claim, is novel.

FINRA invoked both diversity and federal question jurisdiction in its notice of removal. Because the district court concluded that diversity jurisdiction existed, it did not reach the question of federal question jurisdiction.

FINRA invokes both the general federal question statute, 28 U.S.C. § 1331, and the exclusive jurisdictional provision in the Securities Exchange Act of 1934, 15 U.S.C. § 78aa. Because the Supreme Court held in Manning , 136 S.Ct. at 1566, that the Grable & Sons test applies in both contexts, we do not consider the two statutes separately.