2022 IL App (1st) 0854-U
No. 1-20-0854

FIRST DIVISION
March 14, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| NICHOLAS WEBB & THAD BEVERSDORF, | ) | Appeal from the Circuit Court of |
| | ) | Cook County, Illinois, County |
| Plaintiffs-Appellants, | ) | Department, Chancery Division |
| | ) | |
| v. | ) | No. 2016 CH 04136 |
| | ) | |
| FINANCIAL INDUSTRY REGULATORY | ) | The Honorable |
| AUTHORITY, INC., successor to FINRA | ) | Caroline Kate Moreland, |
| DISPUTE RESOLUTION, INC., | ) | Judge Presiding. |
| | ) | |
| Defendant-Appellee. | ) | |

JUSTICE PUCINSKI delivered the judgment of the court.
Justices Coghlan and Walker concurred in the judgment.

**ORDER**

¶ 1     *Held*:  We affirm the circuit court's granting of the defendant's motion to dismiss the plaintiffs' Second Amended Complaint with prejudice pursuant to 735 ILCS 5/2-619.1. Plaintiffs' claims for breach of contract, consumer fraud, and declaratory relief relating to FINRA's arbitration services all fall within the scope of arbitral immunity.

¶ 2     Plaintiff-Appellants Nicholas Webb and Thad Beversdorf (collectively, "Plaintiffs") appeal from the circuit court's dismissal of their Second Amended Complaint. According to the circuit court's characterization of Plaintiff's claims, Plaintiffs take issue with Defendant-Appellee's ("FINRA") adherence to its own rules and standards in providing arbitration services.

The court granted FINRA's 735 ILCS 5/2-619.1 motion to dismiss Plaintiffs' Second Amended Complaint on the basis that pursuant to 735 ILCS 5/2-619(a)(9), Plaintiffs' claims were barred because FINRA was protected by the doctrine of arbitral immunity as to all counts. Having so ruled, the court declined to address FINRA's argument for dismissal pursuant to 735 ILCS 5/2-615 for failure to sufficiently plead a claim. We agree with the circuit court that dismissal was proper because the entirety of Plaintiffs' claims involve alleged actions on the part of FINRA that fall within the protections of arbitral immunity. For the following reasons, we affirm the circuit court's memorandum opinion and order.

¶ 3                                            BACKGROUND

¶ 4       The underlying matter arises from claims that Plaintiffs filed in FINRA's arbitration forum against their former employer, Jeffries. Jeffries terminated Plaintiffs' employment on October 21, 2013, citing poor performance. Plaintiffs asserted that by terminating their employment, Jeffries had breached their employment contracts, retaliated against them, violated wage and hour statutes, and engaged in fraudulent conduct. Each of the plaintiffs' employment contracts contained identical provisions stating that any arbitration proceeding brought with respect to an employment-related matter would be brought before FINRA in Manhattan, New York. Plaintiffs signed a FINRA Arbitration Submission Agreement ("Agreement") on November 1, 2013, submitting their dispute with Jeffries to arbitration governed by the FINRA By-Laws, Rules, and Code of Arbitration Procedure. By entering into the Agreement, Plaintiffs agreed to be bound by the aforementioned rules and procedures, and to be bound by and perform any decision rendered by the arbitrators pursuant to the Agreement. As per the Agreement, Plaintiffs paid the required arbitration fees, signed a submission agreement, and hired counsel to assist them in preparing and submitting a Statement of Claims.

¶ 5    Plaintiffs voluntarily withdrew from the arbitration process prior to the arbitration panel's rendering of a decision and filed suit against FINRA in the circuit court on March 23, 2016. They pled one count of breach of contract and one count seeking a declaratory judgment, arguing that they were "forced to withdraw their claims" from the arbitration forum because FINRA breached its duty to provide just and equitable arbitration services in several ways, including interfering with the arbitrators' decisionmaking, failing to properly train arbitrators, and failing to implement proper procedural mechanisms to facilitate a just and equitable dispute resolution process. The declaratory judgment count includes a list of alleged ways in which FINRA's arbitration rules were unfair and prevented FINRA's arbitration arm from properly adjudicating disputes. Plaintiffs claimed as damages the arbitration fees and legal fees they incurred as required by the arbitration agreement.

¶ 6    On April 27, 2016, FINRA filed a motion to remove the case to federal court on the grounds of federal question and diversity subject matter jurisdiction. The case proceeded before the United States District Court in the Northern District of Illinois, which stated that while it was "questionable" whether federal question jurisdiction existed, the matter was properly before the federal court because diversity jurisdiction existed and the court accepted Plaintiffs' counsel's representation that the amount in question exceeded $75,000. *Webb v. Financial Industry Regulatory Authority, Inc.*, 2017 WL 2868996, 1 n.1 (N.D. Ill. 2017) (not reported in Fed. Supp.) FINRA then moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The court granted the motion on the grounds that FINRA was entitled to arbitral immunity. *Id.* at 1. In discussing the applicability of the immunity, the court stated that Plaintiffs could not avoid arbitral immunity by asserting that they were pleading a breach of contract claim, rather than attacking the arbitration process, because, as the court emphasized by discussing the pleadings and

quoting directly from Plaintiffs' response to FINRA's motion to dismiss, "the crux of their complaint is that FINRA 'has not given the arbitrators or administrators the 'toolbox' needed ... '[t]o promote and enforce just and equitable principles of trade and business.'''" *Id*. at 4. The court granted FINRA's motion to dismiss and dismissed all claims with prejudice. *Id*. at 5.

¶ 7    Plaintiffs appealed the decision of the district court to the Seventh Circuit, which issued its decision on this matter on May 8, 2018. *Webb v. Financial Industry Regulatory Authority, Inc.*, 889 F.3d 853 (7th Cir. 2018) (Ripple, J., concurring in part, dissenting in part). The Seventh Circuit's decision did not turn on arbitral immunity, but on the question of federal jurisdiction. The court determined that while diversity of citizenship existed, this matter did not present the sort of circumstances in which Illinois law permits the recovery of legal fees as damages; since Plaintiffs sought recovery of legal expenses in the underlying arbitration, and these could not be counted towards meeting the amount in controversy requirement for establishing diversity jurisdiction. *Id*. at 859. The court also found that federal question jurisdiction did not exist, as there was no "inescapable" provision of federal law that the court would have to analyze in deciding whether FINRA breached its arbitration agreement. *Id.* at 860. The court determined that this was a state-law contract claim, and therefore did not fall under federal question jurisdiction. *Id*. at 861. The Seventh Circuit remanded the case to the district court with instructions to remand to state court. *Id*.

¶ 8    Upon remand to the circuit court, the court gave Plaintiffs leave to file an amended complaint, which Plaintiffs did on December 12, 2018. It consisted of three counts: Count I for breach of contract, Count II for violation of the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/1, *et seq*. ("Consumer Fraud Act"), and Count III for declaratory judgment. The breach of contract claim and the plea for a declaratory judgment restate the same allegations

of FINRA misconduct as the original complaint. The Consumer Fraud Act count pleads additional facts that (1) FINRA advertises its arbitration services on its website and through its marketing materials; (2) FINRA competes in the alternative dispute resolution market for customers who will make use of those services; and (3) Plaintiffs relied on FINRA's advertising statements in submitting their employment dispute before FINRA's arbitration arm and incurring the required arbitration costs. The count states that FINRA misrepresented its services in the same ways as what is alleged in the breach of contract count. The only difference is that FINRA's alleged actions are now characterized as the source of FINRA's misrepresentations, rather than its breach of the arbitration contract.

¶ 9    FINRA filed a Section 2-619.1 motion to dismiss this complaint on February 11, 2019. FINRA again argued that arbitral immunity applied to the entire complaint and that Plaintiffs had failed to exhaust their administrative remedies under FINRA's Code of Arbitration Procedures and added an argument under Section 2-615 that the Consumer Fraud Act claim merely restated the breach of contract claim, and Plaintiffs could not plead both counts based on the same factual foundations. Plaintiffs responded with a motion seeking leave to conduct discovery pursuant to Illinois Supreme Court Rule 191(b). The circuit court granted FINRA's motion to dismiss Plaintiffs' First Amended Complaint in an order dated August 20, 2019, for reasons presented on the record. The court did not make a specific ruling on Plaintiffs' motion for leave to conduct discovery under Ill. Sup. Ct. R. 191(b). The court dismissed the complaint without prejudice and once again gave Plaintiffs leave to file an amended complaint.

¶ 10    Plaintiffs filed their Second Amended Complaint on October 1, 2020. The Second Amended Complaint consists of one count of violation of the Consumer Fraud Act, and a statement that Plaintiffs incorporate and adopt Counts I and III, for breach of contract and declaratory

judgment, respectively, from their dismissed First Amended Complaint for the purpose of preserving their right to appeal. The facts pled in this count are rewordings of the same core allegations of procedural failings, interference with the authority of arbitrators, failure to provide adequately trained arbitrators, and failing to meet a standard of fairness and commercial integrity. The allegations add wording that FINRA "refus[ed] to administer the arbitration" and "block[ed] the administration of the arbitration" through the same sorts of actions previously pled in the breach of contract claims.

¶ 11    On July 8, 2020, the circuit court issued a Memorandum Opinion and Order granting FINRA's motion to dismiss under Section 2-619 based on the court's finding that the entirety of Plaintiffs' Second Amended Complaint fell within the scope of arbitral immunity. The court wrote, "Plaintiffs color their claim as a fraudulent inducement through statements contained in FINRA's advertising material. However, Plaintiffs' true issue lies with FINRA's alleged inability to comport its arbitration with its own rules and standards. This falls squarely within the established arbitral immunity." Having held that FINRA was protected by arbitral immunity for all of the activity alleged in the complaint, the court declined to address FINRA's Section 2-615 argument as moot.

¶ 12    Plaintiffs filed a timely notice of appeal on August 6, 2020, challenging the dismissal of their Second Amended Complaint.

¶ 13                              ANALYSIS

¶ 14                         Jurisdiction on Appeal

¶ 15    As an initial matter, the parties dispute the scope of what is properly submitted before this court for review. Plaintiffs identify in their appellants' brief and notice of appeal that they appeal from the final judgment entered by the circuit court on July 8, 2020 granting FINRA's motion to dismiss with prejudice Plaintiffs' Second Amended Complaint pursuant to 735 ILCS 5/2-619.1

(West 2019). FINRA argues that since this complaint only contains a single count for violation of the Consumer Protection Act, we lack jurisdiction to review the dismissal of Plaintiffs' claims of breach of contract and for declaratory judgment, which were dismissed without prejudice in a prior order, in which the circuit court allowed Plaintiffs to amend their First Amended Complaint and which Plaintiffs did not properly preserve for appeal.

¶ 16    FINRA further argues that we lack jurisdiction to review Plaintiffs' contention that the circuit court improperly denied their request pursuant to Rule 191(b) for leave to conduct discovery, which Plaintiffs filed in response to FINRA's motion to dismiss their First Amended Complaint. The circuit court does not mention the Rule 191(b) petition in its August 20, 2019 order ruling on FINRA's motion to dismiss; however, the circuit court granted the motion to dismiss the First Amended Complaint in its entirety and gave Plaintiffs leave to amend the complaint. Plaintiffs did not seek leave to conduct additional discovery pursuant to Rule 191(b) in connection with FINRA's motion to dismiss their Second Amended Complaint.

¶ 17    "It is well established that in Illinois, a party who files an amended pleading waives any objections to the trial court's ruling on prior complaints." *Tunca v. Painter*, 2012 IL App (1st) 093384, ¶ 29. If a plaintiff does not file an appeal from a final order dismissing counts of his complaint, or alternatively, does not reallege, refer to, incorporate, or preserve the dismissed counts in a subsequent amended complaint, he waives the right to appeal the dismissal of those counts. *Id.* at ¶ 30. In order to properly preserve a dismissed count in his amended pleading, it is sufficient for a plaintiff to include a "simple paragraph or footnote in the amended pleadings notifying defendants and the court that plaintiff was preserving the dismissed portions of his former complaints for appeal." *Tabora v. Gottlieb Memorial Hosp.*, 279 Ill.App.3d 108, 114 (1st Dist. 1996).

¶ 18    The circuit court's order dismissing Plaintiffs' First Amended Complaint without prejudice, with leave to replead, was not a final, appealable order. *See Paul H. Schwendener, Inc. v. Jupiter Electric Co.*, 358 Ill.App.3d 65, 73 (1st Dist. 2005). However, Plaintiffs state in their Second Amended Complaint that they incorporate and adopt the previously-dismissed Counts I and III, for breach of contract and declaratory judgment, respectively, in order to preserve the right to appeal the dismissal of those counts. While the circuit court's final and appealable Memorandum Opinion and Order dismissing the Second Amended Complaint with prejudice only discusses Plaintiffs' pleadings regarding FINRA's alleged violation of the Consumer Fraud Act, its holding ultimately dismisses the entire Second Amended Complaint with prejudice. As Plaintiffs sufficiently referenced and incorporated the remaining previously-dismissed pleadings, they properly preserved those counts for appeal, and we have jurisdiction to review the circuit court's dismissal of those claims. However, there is no final judgment from which Plaintiffs appeal the denial of their Rule 191(b) petition, and they include no such request for relief in their appellants' brief, despite devoting three pages of their Appellants' Brief to arguing that the circuit court improperly denied that petition. Furthermore, were we to remand this matter back to the circuit court to allow Plaintiffs' pleadings to go forward, that would be the proper time for Plaintiffs to seek additional discovery. Therefore, the question of whether the circuit court erred in not granting Plaintiffs leave to conduct discovery under Rule 191(b) is not before us on appeal.

¶ 19         Plaintiffs' Framing of the Issues Debated on Appeal

¶ 20    Plaintiffs argue that FINRA's position—as well as the circuit court's position in granting FINRA's motion to dismiss—is that FINRA is "above the law" by taking advantage of the doctrine of arbitral immunity to seemingly circumvent state law governing contracts. In furtherance of this

argument, Plaintiffs allege that FINRA—and, again, the circuit court in rendering its judgment—improperly relies on federal law where state law governs.

¶ 21 Plaintiffs' framing is confusing, as it does not accurately describe FINRA's position in response to their argument on appeal, nor is it relevant based on the scope of the issues on appeal. Plaintiffs argue that the doctrine of arbitral immunity is based on state law because "no federal statute confers any legal immunity on arbitration forums, and there is no federal general common law." Plaintiffs further claim that FINRA attempts to position itself above the laws of the State of Illinois by citing to federal caselaw in its response on appeal, and that the application of federal law was already found to be improper by the Seventh Circuit Court of Appeals when it ruled that the matter was a state-law contract dispute that did not fall within federal question jurisdiction. *See Webb*, 889 F.3d.

¶ 22 In claiming that FINRA attempts to circumvent or disregard governing state law, Plaintiffs cite the Seventh Circuit's statement disagreeing with FINRA that federal securities law forms the cornerstone of Plaintiffs' complaint because FINRA's Code of Arbitration Procedures must be approved by the Securities and Exchange Commission. *See id.* at 860. However, what Plaintiffs omit is that this portion of the Seventh Circuit's opinion addresses whether federal question jurisdiction exists over what FINRA admits is a state-law claim, based on the test established in *Grable & Sons* for whether a state-law claim "aris[es] under" federal law so that transfer from state to federal court is proper. *Id.*; *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005). Once the Seventh Circuit remanded this case to the district court with instructions to remand to state court, the matter of federal question jurisdiction was no longer at issue in this case, and is not relevant to the present appeal of the circuit court's dismissal of Plaintiffs' claims.

¶ 23     Plaintiffs are mistaken that FINRA now takes the position that state caselaw is not applicable to this matter. Citing to federal caselaw does not amount to an attempt to relitigate the matter of federal question jurisdiction, nor does it indicate any sort of attempt to position FINRA "above the law of the State of Illinois." The circuit court's order discusses the sole case that Plaintiffs relied on, *Grane v. Grane*¸ 143 Ill. App. 3d 979 (2d Dist. 1986), in addition to several federal cases on the topic of arbitral immunity. The state appellate court in *Grane* cites to several federal cases across various jurisdictions in discussing arbitral immunity. *See id.* at 985-86. Plaintiffs also cite to a few federal cases in their appellants' brief where they argue that arbitral immunity should not apply in this matter. This does not mean that the circuit court, the Second District court, or indeed this court, in citing to federal decisions, is ignoring governing state law. The State of Illinois recognizes the doctrine of arbitral immunity. *See Grane*, 143 Ill. App. 3d 979, 985. Since the enactment of the Federal Arbitration Act in 1925, placing arbitration agreements on the same footing as other legally-enforceable contracts, there has been a rich history of jurisprudence shaping the scope, enforceability, and process of arbitration, and it is simply a reality that many of these cases will come from federal courts. Plaintiffs cannot argue that the circuit court gave priority to federal over state law, particularly because in areas where a conflict of laws exists, federal law would preempt Illinois state law—the record does not indicate that this issue ever arose over the history of this litigation. *See Carter v. SSC Odin Operating Co., LLC*, 237 Ill.2d 30, 40 (2010) (Noting that while Congress did not indicate intent to occupy the entire field of arbitration, the Federal Arbitration Act preempts state law where a conflict of laws arises.)

¶ 24     We recognize that what Plaintiffs are actually arguing is that this matter should be analyzed purely through the lens of contract law. Indeed, Plaintiffs include the question of whether they had an enforceable contract with FINRA in their list of issues on appeal. However, this argument

provides no basis for why we should ignore the doctrine of arbitral immunity in a case where the pleadings concern the conduct and decision-making actions of arbitrators and the manner in which FINRA provided arbitration services. Plaintiffs offer no argument as to why a state court cannot assess whether arbitral immunity applies to state law claims arising from an arbitration dispute. In further argument against Plaintiffs' seeming position that the existence of a valid arbitration contract overrides the doctrine of arbitral immunity in this matter, the district court also found Plaintiffs' support for this argument to be lacking, stating, "They do not pinpoint exactly why this characterization [that arbitral immunity should not apply because this is a contract dispute] should make a difference, instead pointing out that the *International Medical Group* and *Tamari* cases cited by FINRA deal with challenges to the jurisdiction of an arbitral body while no such challenge has been brought here." *Webb*, 2017 WL 2868996 at 3 (referencing *International Medical Group, Inc. v. American Arbitration Ass'n, Inc.*, 312 F.3d 833 (7th Cir. 2002) and *Tamari v. Conrad*, 552 F.2d 778, 780 (7th Cir. 1977)). Plaintiffs do not appear to have provided us with any additional support for this argument.

¶ 25    Furthermore, the question of whether a valid arbitration contract existed between Plaintiffs and FINRA is not disputed—both FINRA and the circuit court recognize that Plaintiffs' signing of the FINRA Arbitration Submission Agreement legally bound them to submit to FINRA arbitration, and we need not review Plaintiffs' argument that their breach of contract claim properly pled the existence of an offer, acceptance, and consideration. The validity of the Agreement is not in dispute; the real issue is whether arbitral immunity bars Plaintiffs' claims, whether for breach of contract or otherwise. Similarly, Plaintiffs present as another issue on appeal the question of whether FINRA owed Plaintiffs any duty when they submitted their employment dispute to FINRA's arbitration forum, signed the Agreement, and fulfilled the conditions required of them

under the terms of the Agreement. As the district court explained in its opinion dismissing Plaintiffs' complaint in federal court, the arbitral immunity caselaw does not suggest that plaintiffs can avoid arbitral immunity by reframing their complaint as a breach of contract action. *Webb*, 2017 WL 2868996 at 3. Again, the validity of the Agreement is not in dispute and the circuit court did not dismiss Plaintiffs' breach of contract claim because it did not find a valid, enforceable contract to exist.

¶ 26                              Standard of Review

¶ 27    A Section 2-619.1 motion allows for a combined motion to dismiss under Sections 2-615 and 2-619, as well as motions for summary judgment under Section 2-1005. *Johnson v. Matrix Financial Services Corp.*, 354 Ill.App.3d 684, 688 (1st Dist. 2004).

¶ 28    A Section 2-615 motion to dismiss presents the question of whether the plaintiff has pled sufficient facts in the complaint to entitle him to relief if proven. *Powell v. American Service Ins. Co.*, 2014 IL App (1st) 123643, ¶ 13. In reviewing a dismissal pursuant to Section 2–615, all well-pleaded facts in the complaint are taken as true and are construed in the light most favorable to the plaintiff. *Id.* A dismissal pursuant to Section 2-615 is only proper where it clearly appears that no set of facts could be proved under the pleadings that would entitle the plaintiff to relief. *Id.*; *Casualty Insurance Co. v. Hill Mechanical Group*, 323 Ill.App.3d 1028, 1033 (1st Dist. 2001). A plaintiff cannot simply rely upon conclusions of law or fact unsupported by specific factual allegations. *Powell*, 2014 IL App (1st) 123643, ¶ 13; *Grund v. Donegan*, 298 Ill.App.3d 1034, 1039 (1st Dist. 1998). The standard of review for a dismissal under Section 2-615 is *de novo*. *Powell*, 2014 IL App (1st) 123643, ¶ 13.

¶ 29    An order of dismissal pursuant to a Section 2-619 of the Illinois Code of Civil Procedure (735 ILCS 5/2-619 (West 2019)) is similarly reviewed *de novo. Porter v. Decatur Memorial*

*Hosp.*, 227 Ill. 2d 343, 352 (2008). The Section 2-619 motion admits as true all well-pleaded facts and all reasonable inferences to be drawn from the facts. *Id.* In addition, all pleadings and supporting documents must be construed in the light most favorable to the non-moving party. *Id.* A dismissal of a pleading pursuant to Section 2-619 is based on certain defects or defenses. *Richter v. Prairie Farms Dairy, Inc.*, 2016 IL 119518, ¶ 18.

¶ 30 A motion to dismiss under Section 2-619(a)(9) specifically argues that the pleadings are barred by an affirmative matter not otherwise listed in this Section. 735 ILCS 5/2-619(a)(1) (West 2019). An affirmative matter under Section 2-619(a)(9) is "something in the nature of a defense that negates the cause of action completely or refutes crucial conclusions of law or conclusions of material fact contained in or inferred from the complaint." *In re Estate of Schlenker*, 209 Ill. 2d 456, 461 (2004). In a Section 2-619(a)(9) motion, "the defendant does not admit the truth of any allegation in plaintiff's complaint that may touch on the affirmative matter raised in the 2-619 motion." *Barber-Colman v. A&K Midwest Insulation Co.*, 236 Ill. App. 3d 1065, 1073 (1992). Where the movant supplies an affirmative matter, the opposing party cannot rely on bare allegations alone to raise issues of material fact. *Atkinson v. Affronti*, 369 Ill. App. 3d 828, 835 (2006). Neither conclusory allegations nor conclusory affidavits are sufficient to defeat properly submitted facts in a Section 2-619 motion. *Allegis Realty Investors v. Novak*, 379 Ill. App. 3d 636, 641 (2008). The question on appeal is "whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law." *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116-17 (1993).

¶ 31 The circuit court granted FINRA's Section 2-619.1 motion to dismiss the Second Amended Complaint on the affirmative matter of arbitral immunity pursuant to FINRA's argument under

Section 2-619. Having done so, the court determined that the argument for dismissal under Section 2-615 was moot, and did not address it. However, we may affirm the circuit court's judgment on any proper grounds supported by the record, even if the circuit court dismissed on improper grounds. *American Service Ins. Co. v. City of Chicago*, 404 Ill.App.3d 769, 776-77 (1st Dist. 2010).

¶ 32        The Circuit Court's Dismissal of Plaintiffs' Second Amended Complaint

¶ 33    Plaintiffs' Counts I and III of their First Amended Complaint and Count II of their Second Amended Complaint are predicated on the same occurrence, involving the same essential facts. Review of the circuit court's judgment hinges on whether any of their claims include properly-pled factual allegations that, if proven, would fall outside the scope of the activities protected by the doctrine of arbitral immunity.

¶ 34    Plaintiffs heavily stress in their argument on appeal that they entered into a legally-enforceable contract with FINRA, and the application of arbitral immunity entirely shields providers of arbitration services from ever having to perform the duties that arise from that contract. This argument can easily be dismissed at the outset of our review of the circuit court's decision, as the doctrine of arbitral immunity has been interpreted and applied to the alleged actions of numerous arbitrators and arbitration forums, including in the State of Illinois, and the issue of its legality is absolutely not within the scope of Plaintiffs' appeal. *See Grane*, 143 Ill. App. 3d at 985-86 (citing to numerous cases applying arbitral immunity and proceeding to analyze whether it applied to the facts of *Grane*, a case proceeding in state court).

¶ 35    We understand that Plaintiffs signed an agreement that they anticipated would, in exchange for their submission to the rules and procedures of FINRA's arbitration forum, provide for them a fair and equitable resolution to their dispute with their former employer, and that at some point in the arbitration, they felt that they did not receive the service they expected. It is undisputed that

the Agreement is a legally binding contract. In fact, the arbitration agreement is recognized by our courts as a binding contract forming the basis of a valid arbitration, which is necessary in order to implicate arbitral immunity. *See Sacks v. Dietrich*, 663 F.3d 1065, 1070 (9th Cir. 2011) ("Because the arbitrators acted with full authority under the arbitration agreement, they cannot be subject to suit by a party representative.") However, it is well-established in our jurisprudence that a legally cognizable immunity may prevent a litigant from suing certain parties in certain situations.

¶ 36    The doctrine of arbitral immunity serves a purpose analogous to judicial immunity, which allows judges the freedom to act on their best view of the merits of a case without undue influence, by protecting them from harassing lawsuits from frustrated litigants; arbitral immunity extends this protection to private arbitrators. *See Coleman v. Dunlap*, 695 F.3d 650, 652 (7th Cir. 2012); *Aku v. Chicago Board of Education*, 290 F.Supp.3d 852, 865 (N.D. Ill. 2017); *Olson v. National Ass'n of Securities Dealers*, 85 F.3d 381, 382-83 (8th Cir. 1996). Arbitral immunity renders arbitrators immune from suit for all acts which they perform in their capacity as arbitrators. *Grane*, 143 Ill.App.3d at 985 (quoting *Tamari*, 552 F.2d at 780). In general, it applies to "all acts within the scope of the arbitral process." *New England Cleaning Services, Inc. v. American Arbitration Ass'n*, 199 F.3d 542, 545 (1st Cir. 1999). The immunity has been extended to cases where the authority of the arbitrator to resolve a dispute is challenged. *See Tamari*, 552 F.2d at 780. An arbitrator is "not liable for negligence, fraud, or misconduct, even where it is sufficient to invalidate the award." *Grane*, 143 Ill.App.3d at 985 (quoting 5 Am.Jur.2d Arbitration and Award, sec. 107 (1962) and citing further cases where the court applied arbitral immunity to claims of fraud and misconduct against arbitrators).

¶ 37    Arbitral immunity can be extended not only to individual arbitrators, but to organizations that sponsor arbitrations as well. *See New England Cleaning Services*, 199 F.3d at 545; *Honn v.*

*National Ass'n of Securities Dealers, Inc.*, 182 F.3d 1014, 1017 (8th Cir. 1999); *Olson*, 85 F.3d at 382. A sponsoring organization's immunity extends to the administrative tasks it performs, to the extent that those tasks are integrally related to the arbitration. *New England Cleaning Services*, 199 F.3d at 545. Indeed, FINRA itself, as well as the National Association of Securities Dealers, which was a precursor organization to FINRA, has been found to be covered by arbitral immunity for acts done within the scope of arbitration. *See, e.g., Lanza v. Financial Industry Regulatory Authority*, 953 F.3d 159 (1st Cir. 2020); *Pfannenstiel v. Merrill Lynch, Pierce, Fenner & Smith*, 477 F.3d 1155 (10th Cir. 2007); *Honn*, 182 F.3d (8th Cir. 1999); *Olson*, 85 F.3d (8th Cir. 1996).

¶ 38     Examples of where arbitral immunity has been found to apply cover a wide range of arbitration actions. *See Olson*, 85 F.3d at 383 ("A sponsoring organization is immune from civil liability for improperly selecting an arbitration panel, even when the selection violates the organization's own rules."); *Austern v. Chicago Bd. Options Exchange, Inc.*, 898 F.2d 882, 886 (2d Cir. 1990) ("[D]efective notice and improper selection of the arbitration panel *** were sufficiently associated with the adjudicative phase of the arbitration to justify immunity."); *Honn*, 182 F.3d at 1017-18 (Even if the sponsoring organization acted improperly in allowing certain witnesses to testify, in forwarding materials to the arbitrators, and in formulating and delivering responses to the plaintiff's subpoenas, it was performing functions that were necessary to arbitration administration and therefore immune.); *Cherdak v. American Arbitration Association Inc.*, 443 F.Supp.3d 134, 156-57 (D.D.C. 2020) (The sponsoring organization's "decision regarding whether or not it has performed a sufficient review of an arbitration clause's due process compliance is an act within the arbitral process" and therefore entitled to immunity.); *Pfannenstiel*, 477 F.3d at 1159 (Arbitral immunity extended to the plaintiff's claims that the sponsoring

organization lost his personal property where the court determined that the plaintiff was seeking vacatur of the arbitrator's decision.)

¶ 39    The Seventh Circuit in *Tamari* analogized a plaintiff's attempt to sue an arbitrator to a dissatisfied litigant attempting to sue a juror in order to obtain a declaration that the jury's verdict was void on the ground that the selection of the jury was improper. *See Tamari*, 552 F.2d at 781. The court explained that this would place an unfair burden on jurors and would discourage individuals from becoming jurors. *Id.* The court went on to state that a party to an arbitration does not need to sue the arbitrator in order to seek judicial recourse for an improperly-conducted arbitration. It explained that the plaintiff could have filed an action in court to have the arbitrator's award set aside, or assert the alleged arbitral impropriety as a defense when the successful party to the arbitration attempts to enforce the award in court. *Id.* This should provide some solace to Plaintiffs in the present matter, as they proceed with their appeal under the mistaken belief that the doctrine of arbitral immunity places arbitrators and arbitration forums entirely above the law, free to act as they wish. Unfortunately for Plaintiffs, they did not wait for FINRA's arbitration panel to render a decision; they voluntarily withdrew from the process before any award was made.

¶ 40    We turn now to whether the alleged acts that form the basis of Plaintiffs' complaint against FINRA fall within the scope of decisional acts conducted in the course of the arbitral process and are therefore protected. Plaintiffs' Second Amended Complaint lists the following ways in which FINRA allegedly acted that form the basis of their Consumer Fraud Act claim:

> a. by refusing to administer the arbitration by refusing to allow arbitrators from facilitating a just and equitable resolution of the disputes by preventing the arbitrators from using procedural mechanisms necessary to achieve a just and equitable resolution;

> b. by refusing to administer the arbitration by barring its arbitrators from using procedural mechanisms to certify and authorize the exchange of information between the parties to a dispute;

c. by refusing to administer the arbitration by refusing to train its arbitrators in procedures such as the Sedona Principles to facilitate the exchange of information;

d. by blocking the administration of the arbitration by interfering in its arbitrators' exercise of their discretion and directing arbitrators to Rule in a fashion inconsistent with the industry standard for the administration arbitrations.

e. by blocking the administration of the arbitration by imposing interpretations of its Rules that are contrary to the facilitation of a just and equitable resolution of disputes and contrary to the industry standard for arbitrations; and,

f. by refusing to administer the arbitration by failing to provide arbitrators with the necessary authority to enforce just and equitable principles of trade and business, to maintain high standards of commercial honor and integrity and to prevent fraudulent and manipulative acts and practices.

¶ 41 In an attempt to avoid pleading acts that fall within the scope of arbitration activity, Plaintiffs style their Consumer Fraud Act count as one for false advertising. They claim that FINRA advertised its alternative dispute resolution services through its website, where FINRA made promises to administer arbitration services consistent with the industry standard for fair and equitable arbitration, that it would "enforce high standards of commercial honor and integrity," and would "promote just and equitable principles of trade and business." Plaintiffs plead that they relied on these representations in deciding to make use of FINRA's arbitration services, and in incurring the fees and costs of arbitration, including the cost of retaining counsel. They contend that FINRA misrepresented its services through the above-listed actions. However, Plaintiffs cannot evade the reality that an arbitration occurred (or rather, was underway before Plaintiffs chose to withdraw), and the core of their complaint relates to how FINRA administered that arbitration.

¶ 42 In their First Amended Complaint, and preserved for appeal in their Second Amended Complaint, Plaintiffs claim that FINRA breached the Agreement through the following actions:

a. by failing to provide the requisite sources of authority to its arbitrators to facilitate a just and equitable resolution of the pending disputes;

b. by failing to provide arbitrators the appropriate procedural mechanisms and safeguards to fulfill FINRA's contractual promises;

c. by failing to provide its arbitrators with procedural mechanisms to certify and authorize the exchange of information between the parties to a dispute;

d. by failing to properly train its arbitrators;

e. by interfering in its arbitrators' exercise of their discretion and imposing interpretations of its Rules that are contrary to the facilitation of a just and equitable resolution of disputes submitted to FINRA; and,

d. [*sic*] by failing to provide arbitrators with the necessary authority to enforce just and equitable principles of trade and business, to maintain high standards of commercial honor and integrity and to prevent fraudulent and manipulative acts and practices.

¶ 43    Courts have not been receptive to attempts to circumvent arbitral immunity by pleading around the actions of the forum or arbitrators with which the plaintiffs actually take issue. In *Honn*, the federal district court had dismissed Honn's complaint alleging that NASD had deprived him of a fair and expeditious disposition of his claims "in selecting or allowing certain witnesses to testify in the arbitration, in forwarding materials to the arbitrators, and in formulating and delivering responses to Honn's subpoenas in connection with the arbitration." *Honn*, 182 F.3d at 1016-17. On appeal, he argued that because he "alleged that the '*non-arbitration arm*' of the NASD acted improperly, his claims are based upon actions that were not necessary to, and outside the scope of, NASD's arbitration-sponsoring role" and therefore arbitral immunity did not apply. *Id.* at 1017 (emphasis in original). Here, Plaintiffs similarly argue that they are alleging wrongdoing by FINRA actors other than the arbitrators—that some unspecified individuals committed some unspecified acts that were not "decisional acts of the arbitrator" but rather "acts *preventing* the 'decisional acts of the arbitrators,'" as they state in their Appellants' Brief. The lack of any mention of who these individuals might have been, or in what ways the arbitrators were prevented from making decisional acts, across a combined fifty-five pages of briefing, is telling.

Plaintiffs clearly take issue with the way they sensed the arbitration was going before they voluntarily withdrew and sued the arbitration forum. They cannot find any valid fault with the arbitration aside from how they believe the arbitration was conducted and how the arbitrators appeared to be preparing to rule, which they know is not a theory on which they can proceed, given that these acts fall squarely within the scope of arbitral immunity.

¶ 44    Another comparable case is *Pfannenstiel*, in which the Tenth Circuit found arbitral immunity to apply to the plaintiff's suit against the sponsoring organization for allegedly losing his property, in the form of boxes of evidence and hearing tapes, after the arbitration. 477 F.3d at 1157. Pfannenstiel argued that his claims concerned misconduct separate from and unrelated to the judicial function of the arbitration organization. *Id.* at 1159. The court disagreed, stating that while arbitrators and sponsoring organizations are not immune from all claims against them, the question to consider in applying arbitral immunity is whether the claim, "regardless of its nominal title, effectively seek[s] to challenge the decisional act of an arbitrator or arbitration panel." *Id*. The court found Pfannenstiel's attempt to characterize his claim as having nothing to do with the arbitration decision rendered against him. In doing so, the court looked to the fact that Pfannenstiel also sued Merrill Lynch (the opposing party to the arbitration) claiming that his issues against both parties were related, and was seeking to have the arbitration panel's decision vacated as part of his plea for relief. *Id.* at 1159-60. His basis for that demand was that he was denied his rights to a fair "trial" because of NASD's "neglectful" handling of evidence and protocol for setting standards for the transfer of evidence, and alleged cover-up of the aforementioned actions "rendering undue delay." *Id.* at 1160. The court further quoted from the complaint, noting that Pfannenstiel claimed NASD's actions "rendered unfair advantage to [Merrill Lynch] and deni[ed] plaintiff's rights to 'appeal' or obtain 'vacancy' under normal methods." The court concluded that Pfannenstiel's

claim was "little more than a veiled attack on the decision rendered against him by the arbitration panel, and that, accordingly, the NASD is entitled to arbitral immunity from that claim." *Id.*

¶ 45    In the present matter, we similarly find that Plaintiffs' dispute is over the arbitration panel's decisionmaking, and having been told several times now that their claims run up against the doctrine of arbitral immunity, they attempt to point to activity they believe to be outside the arbitration process as the true source of their claims. More specifically, Plaintiffs cannot state with any degree of clarity and specificity what it is that FINRA did to obstruct the decisionmaking authority of the arbitrators, as they claim. Adding allegations of misleading advertising through promises on FINRA's website to enforce high standards of integrity and promote equitable principles does not avoid the fact that Plaintiffs take issue with how the arbitration was proceeding—precisely the realm to which arbitral immunity applies. Furthermore, as Plaintiffs plead in their original complaint, their employment contracts included provisions requiring any employment-related arbitration to proceed before FINRA—this calls into question their assertion that they relied on FINRA's advertising of its arbitration services as they shopped around for an arbitration forum in which to file their dispute. *See Webb*, 2017 WL 2868996, 1.

¶ 46    Like the plaintiffs in *Pfannenstiel* and *Honn*, Plaintiffs attempt to attack the arbitrators' decisionmaking by pleading that the basis for the improper arbitration results (or would-be results, given that Plaintiffs did not wait for the FINRA arbitration panel to render its decision) actually took place outside of the arbitration, but their pleadings indicate otherwise. Plaintiffs' complaints repeatedly reference the manner in which the arbitration was administered, the arbitrators' exercise of discretion and decisionmaking, the arbitrators' training, and the interpretation of arbitration rules and development of procedures for administering arbitration. All of this, even if improperly done, falls within the functions necessary to administer arbitration, and therefore shielded by

arbitral immunity. *See, for example, Grane*, 143 Ill.App.3d at 985 (An arbitrator is "not liable for negligence, fraud, or misconduct, even where it is sufficient to invalidate the award.")

¶ 47     As in the arbitral immunity caselaw we have discussed above, arbitral immunity applies to a breach of contract claim against the arbitration forum; it also applies to Plaintiffs' Consumer Fraud Act claim, which merely rephrases the same alleged activity. To the extent that Plaintiffs have pled any actions outside the scope of the arbitration process, we cannot analyze whether this is the case, as Plaintiffs do not plead any specific facts we can look at in order to make this decision. While the circuit court was obligated to read the complaints in the light most favorable to Plaintiffs, they were not required to take Plaintiffs at their word that FINRA undertook any acts outside the scope of arbitral immunity if Plaintiffs do not sufficiently plead such facts, even if they needed the opportunity to conduct discovery to refine those pleadings. To compare this matter to *Grane*, which Plaintiffs cite as a case where the court identified non-protected arbitrator actions, Plaintiffs do not refer to any activity by the arbitration panel or forum that falls outside of those respective roles, unlike the arbitrator in *Grane* who was not protected by immunity where he allegedly acted as a legal representative of some of the opposing parties to the arbitration and fraudulently induced the plaintiff and a codefendant to enter into binding arbitration. *Id.* All of the actions that Plaintiffs refer to here occurred after they signed the Agreement binding them to FINRA's arbitration process—in fact, the existence of a valid legal contract is something that Plaintiffs themselves vociferously assert. We agree with the circuit court that Plaintiffs fail to plead any non-protected activity on the part of FINRA, and therefore the court properly dismissed Plaintiffs' Second Amended Complaint on the basis of arbitral immunity.

¶ 48     We are further convinced by the decision of the district court regarding this matter, before which Plaintiffs and FINRA made essentially the same arguments on appeal here. The district

court stated in its discussion of *International Medical Group* and *Tamari* that the Seventh Circuit cases were instructive "on the difference between situations when arbitral immunity applies (*e.g.*, when a claim is 'integrally related' to the administrative tasks of a sponsoring organization) and when it does not (*e.g.*, when a claim can be stated entirely without reference to the arbitration)." *Webb*, 2017 WL 2868996 at 3 (citing *International Medical Group*, 312 F.3d at 844.) It continued that both *International Medical Group* and *Tamari* stood for the proposition that because arbitration was analogous to judicial proceedings, arbitral immunity serves to prevent litigants from having courts second-guess how arbitrators administer their decisions and perform the tasks necessary to the arbitration process—precisely what Plaintiffs attempted to do before the circuit and district courts, and what they attempt to do before us now. *Id*. at 4; *see also International Medical Group*, 312 F.3d at 844; *Tamari*, 552 F.2d at 781). We agree with the District Court that at the core of Plaintiffs' complaint is an attack on FINRA's performance of the tasks and duties necessary to arbitrate Plaintiffs' employment dispute, and that this is precisely the sort of complaint that arbitral immunity serves to prevent, in order not to overly burden and discourage arbitrators in the performance of their professional duties. *Webb*, 2017 WL 2868996 at 4. To put it in other words, as we have seen in their three attempts to plead a valid claim against FINRA, they are unable to do so without reference to the arbitration, and specifically to the administrative tasks of FINRA as a sponsoring organization. *Id.*

¶ 49                    Alternate Grounds for Affirming the Circuit Court's Order

¶ 50    While we find that the circuit court did not err in dismissing the entirety of Plaintiffs' Second Amended Complaint pursuant to Section 2-619(a)(9) on the grounds that that FINRA was protected by arbitral immunity, we briefly consider FINRA's argument that the court could have also dismissed the complaint under Section 2-615 because Plaintiffs fail to plead fraud with

specificity and particularity, the misrepresentations pled concern future promises and not present fact, and Plaintiffs cannot prove causation under any set of facts.

¶ 51    We agree with FINRA that Plaintiffs have failed to plead a single specific, nonconclusory factual allegation of FINRA's wrongdoing; however, we apply our analysis to both the Consumer Fraud Act count in the Second Amended Complaint, as well as the counts for breach of contract and declaratory judgment preserved for appeal from Plaintiffs' First Amended Complaint. Taking all well-pled facts in the light most favorable to the Plaintiffs, we do not find that the pleadings are sufficient to entitle Plaintiffs to relief if proven. Plaintiffs have had three opportunities to identify how FINRA allegedly interfered with the arbitrators' decision-making and exercise of discretion, in what way FINRA imposed improper interpretations of its arbitration rules, undermined the authority of the arbitrators, refused to allow arbitrators to administer a fair and equitable dispute resolution, failing to train arbitrators, or any of their other conclusory accusations. We understand that Plaintiffs argued they were prevented by the circuit court from conducting discovery pursuant to Ill. Sup. Ct. R. 191(b), but even if they lacked full information of FINRA's actions at the time of pleading, they must provide more than vague allusions to obstruction and interference—a court is not required to deem bare conclusions of law or conclusory factual allegations unsupported by specific facts admitted for the purposes of a Section 2-615 motion to dismiss. *Coghlan v. Beck*, 2013 IL App (1st) 120891, ¶ 35. Furthermore, Plaintiffs cannot rely on ambiguous pleadings to state that the court must resolve those ambiguities in the light most favorable to them on a Section 2-615 motion to dismiss. *Id*. While nothing in their pleadings alleges misconduct that falls outside the protections of arbitral immunity, Plaintiffs' three counts could also have properly been dismissed pursuant to Section 2-615.

¶ 52                                    CONCLUSION

¶ 53    For the foregoing reasons, the judgment of the Circuit Court of Cook County is affirmed.

¶ 54    Affirmed.